[Civil No. 3175.   Filed June 6, 1932.]

[11 Pac. (2d) 953.]

THE BANK OF ARIZONA, a Banking Corporation, Appellant, v. THE ARIZONA CENTRAL BANK, a Banking Corporation Doing Business as THE ARIZONA BANK, and THE ARIZONA BANK, a Banking Corporation, Appellees.

Messrs. Favour & Baker, for Appellant.

Messrs. Moore & Shimmel, for Appellees.

LOCKWOOD, J.—This is an action by the Bank of Arizona, a banking corporation, hereinafter called plaintiff, against The Arizona Bank, a banking corporation, hereinafter called defendant, seeking to enjoin the latter from using in any manner the corporate name "The Arizona Bank" or any corporate name containing the words "Bank of Arizona," not modified by some other distinguishing words.

The case was tried to the court without a jury and the relief sought for denied, whereupon the matter was brought before us for review.

This suit is, in substance, one for the purpose of restraining unfair competition, and is governed by the rules applying to such an action. The unfair competition alleged is the use by defendant in its banking business of a name so similar to that of plaintiff that confusion will arise among the customers, present and prospective, of the two banks, so as to deprive plaintiff of the valuable good will

attached to the use of its corporate name and to transfer a large part of such good will to defendant.

The question of unfair competition has been before the courts many times, and much has been said in regard to the nature of the action and the essentials thereof. We think as good an explanation as any is found in the recent case of *Federal Securities Co.* v. *Federal Securities Corp.*, 129 Or. 375, 66 A. L. R. 934, 276 Pac. 1100, which was also to enjoin the use of a corporate name. After reviewing a large number of the leading cases the court said:

"We believe that they justify the conclusion that primarily it is not the name which is protected, but the business; the latter is guarded against injury through a fraudulent traffic in its name by later comers. The business will be protected whether conducted in the name of an individual or that of a corporation; whether the name is fanciful or not. But, to justify relief, the circumstances must be such that it appears that the business will suffer from a deceptive use of its name, or that by reason of a similar act of unfair competition, the public will be imposed upon. . . .

"The ultimate question is always *whether trade is being unfairly diverted,* and whether the public is being cheated into the purchase of something which it is not in fact getting; the courts interfere solely to prevent deception. The law recognizes a right of property in a name, and generally permits each to conduct his business in his own name; these rights are subject to the limitation that they shall not be so dishonestly exercised that the public will be misled as to the identity of a business or the source of a piece of merchandise. The sole distinction between a corporate and an individual name, in the application of these principles, is that a second incorporator comes to the name not unconsciously, but by choice, and that he need not select the name of an already well-established business. Should he do so, he thereby will supply evidence that he intends to palm off his goods as those of the first appropriator. And, as is suggested

in *Newby* v. *Oregon Cent. Ry. Co.*, *supra* [Fed. Cas. No. 10144, Deady, 609], 'although not technically a trade-mark, the authorities are in favor of holding that a corporate name deserves the same consideration as a trade-mark.' The injury guarded against is two-fold: (1) Injury to the public by having palmed off upon it a spurious article believing it to be the product of the old established firm in which it reposes confidence; (2) injury to the defrauded corporation by having its trade diverted to the new-comer.'' (Italics ours.)

It will be noted that there are two injuries to be guarded against, one to the public and the other to the defrauded corporation. There is no complaint in the present case that the general public is being injured. The wrong set up is the injury to the plaintiff.

With these general principles before us, let us consider the facts in the case at bar, for it is obvious on a careful examination of the cases that there is usually very little dispute as to the law, the real argument being over its applicability to the facts.

Plaintiff herein was incorporated under the laws of the territory of Arizona in 1877, and in 1927 its charter was renewed for a further period of twenty-five years. Since the time of its incorporation it has been carrying on a general banking and trust business in Prescott, Arizona, and has for years maintained branches in Jerome and Clarkdale. Approximately ninety-four per cent. of its depositors live in Yavapai county, while the other six per cent. are scattered all over the country, most of them, however, presumably living in Arizona. A large number of these outside depositors are persons who opened their deposits while residents of Yavapai county, and, when they moved away, for various reasons, continued their old banking relations. Through its many years of successful operation plaintiff has built up a reputation in banking circles of the highest character, which

is naturally of great value to it, and is a valuable property right.

Defendant was incorporated approximately ten years after the incorporation of plaintiff under the name of "The Arizona Central Bank." Its original place of business was Flagstaff, Arizona, but it later established branches in McNary, Williams, Kingman and Oatman. In January, 1930, the control of defendant changed hands and it moved its .principal place of business and banking office to Phoenix, maintaining all its existing branches and also adding new ones at Chandler and Gilbert. . In accordance with the methods provided by law, defendant, after its removal, changed its corporate name from "The Arizona Central Bank" to "The Arizona Bank." The reason for dropping the word "Central" was that some years ago there was a Central Bank in Phoenix which failed under rather discreditable circumstances, and the officers of defendant wished to avoid any possibility of its being confused in the minds of the public with the defunct bank.

When the officers of plaintiff learned of the proposed change of name, they protested in every possible manner to the officers of defendant and to the corporation commission, but without avail, and, after the change in name was approved by the corporation commission, but before any place of business in Phoenix was opened by defendant, this action was promptly filed.

There was a large amount of evidence offered by both plaintiff and defendant, which we shall consider at the proper time. The first point raised by defendant is that in actions of this kind it is necessary that actual damages be shown by the plaintiff, and that, since at the time of the filing of the action the former had not yet commenced the use of its new name, the action was prematurely brought. This particular question is discussed in the case of *Standard Oil Company*

*of Maine* v. *Standard Oil Company of New York,*
(C. C. A.) 45 Fed. (2d) 309. After reviewing the
various cases bearing on the question, the court said:

"The law of unfair competition in trade is of com-
paratively recent origin and growth . . . ; but it has
been and is being extended to cover all instances of
fraudulent interference with another business. Courts
of equity are extending the principles of equity to
enjoin unfair competition in all its phases. There
can be no good reason why it should not exercise its
power to prevent threatened unfair competition be-
fore it is put into effect any more than any other
species of unlawful acts from which irreparable dam-
age may result.

"And again, under section 365, Nims says: 'In-
junctions will be granted to prevent threatened acts of
unfair competition. It is not necessary to wait until
a name that tends to mislead the public and is likely
to be used for that purpose, actually is used in the
business of the defendant. Equity favors him who in
such a case acts promptly and before rights of equities
(such as those of innocent purchasers of defendant's
stock) have attached.' "

We agree with the rule thus stated, and hold that
the action was not prematurely brought.

But, in order to justify the issuance of any injunc-
tion, it is necessary to show that unfair competition
actually exists or will exist.

Even taking the evidence at its strongest in favor
of plaintiff, we think that the parties were not en-
gaged in competitive business in the sense that such
word is generally used in regard to banking corpo-
rations. As we have said ninety-four per cent. of the
depositors of plaintiff live in Yavapai county. De-
fendant's business shows at least the same percentage
living outside of Yavapai county. The possible com-
petition between the two banks is limited at most,
therefore, according to the evidence, to six per cent.
or seven per cent. of their respective depositors.

In determining the extent and character of competition necessary to justify injunctive relief, the nature of the business engaged in by the parties and the places where it is carried on are very material. In certain cases it is held that the nature of the business is such that no competition exists. *Borden Ice Cream Co.* v. *Borden's Condensed Milk Co.,* (C. C. A.) 201 Fed. 510; *Corning Glass Works* v. *Corning Cut Glass Co.,* 197 N. Y. 173, 90 N. E. 449; *Clark* v. *Freeman,* 11 Beavan 112.

On the other hand, in a general commercial business involving the wholesale or retail selling of the same classes of specific articles, competition is necessarily keen and unrestricted, and protection is much more liberally extended. *Bissell Chilled Plow Works* v. *T. M. Bissell Plow Co.,* (C. C.) 121 Fed. 357.

In *New York Trust Co.* v. *New York County Trust Co.,* 125 Misc. Rep. 735, 211 N. Y. Supp. 785, it is said:

"It is a well-known fact that a broader latitude has been allowed in the matter of similarity of names in banking institutions than perhaps in ordinary commercial enterprises."

In case of *Nebraska Loan & Trust Co.* v. *Nine et al.,* 27 Neb. 507, 20 Am. St. Rep. 686, 43 N. W. 348, the defendant and plaintiff were both engaged in the banking business, and the names used were identical. The headquarters of the two corporations, however, were situated about 100 miles apart, and the court said:

" . . . The nature of the business transacted by the companies is such that, considering the distance between their principal offices, there can be no substantial conflict of interest. Before plaintiff can enjoin defendants, this conflict would have to be shown, and that the establishment of the new company in business in Lincoln would be to practice a deception

upon those who use ordinary care in the conduct of their business transactions. . . . "

Much more is this held to be true when the names used are not identical, but merely similar.

The whole subject is thoroughly annotated in 66 A. L. R., pages 948–1033, and practically all the cases involving every phase of the protection of a corporation against the use of a similar name by another corporation are collated. A large number of these cases deal with banks and trust companies. In some cases the names are held to be so similar that, under the circumstances of the particular case, there was unfair competition. In a much larger number of cases it was held that no such competition existed. In the majority, if not all, of the cases where the unfair competition was held to exist, the banks were located in the same town or city, or else it was evident there was a deliberate intent fraudulently to appropriate the plaintiff's good will, neither of which elements occur in the case at bar. In fact, even in cases such as *Detroit Savings Bank* v. *Highland Park State Bank*, 201 Mich. 601, 167 N. W. 895, *Michigan Savings Bank* v. *Dime Savings Bank,* 162 Mich. 297, 139 Am. St. Rep. 558, 127 N. W. 364, *In re Los Angeles Trust Co.,* 158 Cal. 603, 112 Pac. 56, and *Peoples Trust Co.* v. *Safe Deposit & Trust Co.,* 259 Pa. 62, 102 Atl. 412, where the institutions were doing business in the same city and the similarity of names was practically as great as in the case at bar, the injunction was denied.

We are of the opinion that, taking the evidence as a whole, the possible competition between plaintiff and defendant was not shown to be so certain or large that we can say as a matter of law the trial court could not have found that no real competition existed. But even assuming for the sake of argument that there was some competition, we think the evidence failed

to show affirmatively that the similarity of names and the competition was such that there was a reasonable probability plaintiff would be injured thereby. At the time of the trial, which was some months after defendant had commenced using its new name, there was an attempt to show that a confusion had already arisen by instances of misaddressed mail or misentitled checks and similar matters. We think, however, that the trial court was justified in finding from the evidence that there was no such confusion as had caused the plaintiff to lose any business, or the defendant to gain any on account of the similarity of names, or that there was any likelihood that such would occur in the future.

It is suggested that the similarity of names is such that in case defendant should fall into ill repute in the community where it does business, that such ill repute might be imputed to plaintiff. We think, in view of the fact that so far as the evidence is concerned it appears defendant's reputation is as good as that of plaintiff, and of the different localities in which they do business, that such a possibility is too remote and fanciful to be considered.

Summing up the whole case, it appears to us that, upon the record as a whole, it does not appear affirmatively that the use of the name of "The Arizona Bank" by defendant, under the situation as it exists at the present time, or apparently will exist in the future, will be competition, as defined by the best considered authorities upon that subject, to such an extent that we can say the trial court erred, as a matter of law, in refusing to issue the injunction. Of course, if at a later time it should appear that the situation has changed so that unfair competition, as a matter of fact and law, does exist, the denial of the injunction in this case will not debar plaintiff from seeking relief when it is entitled to it. The judg-

ment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.