[Civil No. 4664. Filed July 14, 1945.]

[160 Pac. (2d) 761.]

HOMER D. LININGER, Doing Business as, and Under the Name of, THE LODGE ON THE DESERT, Appellant, v. DESERT LODGE, a Corporation, Appellee.

Mr. John W. Ross, for Appellant.

Messrs. Misbaugh and Fickett, and Mr. William S. Dunipace, for Appellee.

WALSH, Superior Judge.—Appellant, plaintiff below, brought this action to restrain appellee from using in connection with its business the name "Desert Lodge," and for damages. The cause was tried to the Court, resulting in a judgment denying appellant relief and dismissing the action, from which judgment appellant prosecutes this appeal.

The evidence adduced by the parties upon the trial of the cause may be summarized as follows: .

Since June, 1935, appellant has been operating on the eastern outskirts of Tucson, a resort hotel, carrying on such business under the name, "The Lodge on the Desert." Appellant's premises are not located upon any through or transcontinental highway and, in so far as buildings are concerned, consist of a main building, a dining hall and a number of cottages. The business is open only during the winter months, viz.: from September 15th to May 15th, and is operated solely on the American plan, that is, for a single, stipulated rate or price both meals and lodging are furnished to guests. The rates charged by appellant are, for a single person, $10 per day and up, and for two persons, $18 per day and up.

In developing patronage for his business, appellant endeavors to reach prospective guests at their home localities and there interest them in Arizona in general and in "The Lodge on the Desert" in particular. To that end, while he does almost no local advertising of his business, he has carried on an extensive campaign of national advertising. His business is listed

with and advertised by very many tourist agencies over the country, such advertising specifying the plan upon which the hotel is operated and the rates charged for accommodations. During the summer months, when the hotel is closed, appellant travels over the United States, and even in Europe, promoting business for his institution by visiting the larger tourist agencies, lecturing and showing moving and still pictures to tourist and service clubs, and personally contacting former patrons and others who have evidenced interest in becoming patrons of his business.

Subsequent to the institution of this action, and because of conditions brought about by the war, appellant modified the usual conduct of his business by discontinuing the service of meals to guests, closing his dining room and installing kitchenettes in some of his rooms. However, the alteration is admittedly but temporary and it is appellant's intention, just as promptly as conditions will permit, to return to the normal operation of his business as an American plan resort hotel.

Appellee operates an automobile or tourist court under the name "Desert Lodge," about two miles south of Tucson on that part of a transcontinental highway, U. S. 80, which is known locally as the Tucson-Benson Highway. Prior to August, 1941, when it was purchased by the parties who comprise appellee's present stockholders, the court was owned and operated under the name "Chief Motel." Immediately following completion of the purchase, however, such stockholders incorporated under the name "El Chief Rancho," and carried on the business under that name until December, 1941, when the articles of incorporation were amended to change appellee's corporate name to "Desert Lodge." Appellee's business has been since conducted under the corporate name.

Appellee's tourist court consists of 14 cottages or cabins erected upon its premises and its principal source of patronage is from tourists who are upon the highway and who desire lodging accommodations over night, though some guests do remain for more extended periods of time. Appellee serves no meals to its guests, but some of its cottages are equipped with kitchenettes for the accommodation of those desiring to prepare their own meals upon the premises. The business is open the year round and the rates are $3 to $5 per day. Appellee does no national advertising and, in fact, up to the time of the filing of this action, did no advertising whatever except to erect a sign bearing its name at its place of business. While the suit was pending, appellee did run some advertisements in the Tucson daily papers for a period of about two months.

"Desert Lodge" was chosen by appellee as its corporate name and as its business name because of the location of its business on the edge of the desert; and while appellee's managing officers, prior to adopting its name, had heard of a business at Tucson operating under the name "The Lodge on the Desert," they had no purpose or intention of confusing the public or attempting to attract patrons or prospective patrons of "The Lodge on the Desert."

Up to the time of the trial, on January 30, 1943, there had occurred no instance in which a person transacted business with either appellant or appellee when he believed he was dealing with the other. In the fourteen-month period between the adoption of the name "Desert Lodge" by appellee and the trial, a few telephone calls were received by appellant which were apparently intended for guests at appellee's court, and, during the same period of time, packages, letters and telegrams had been brought to appellant's place of business when addressed to guests at "Desert Lodge," such misdeliveries aver-

aging about two per month. With regard to such misdeliveries, however, appellant has at no time attempted to prevent a recurrence of the misunderstanding by apprising the messengers or deliverymen of the existence of appellee's place of business. Appellee, on its part, has experienced no confusion on account of the similarity between its name and that of appellant; it has received no telephone calls intended for appellant or his guests and there has been no misdelivery to it of packages, mail or telegrams.

In the preparation of the 1942 edition of "Lodging For A Night," a popular directory of hotels, inns and automobile courts published by one Duncan Hines for the use of the travelling public, the similarity of the names used by appellant and appellee apparently led the publisher's staff to assume that there was some connection in the management or operation of the two businesses, with the result that both are listed in the same paragraph in the space devoted to describing accommodations available to travellers at Tucson. No information furnished to the publisher by either appellant or appellee caused the assumption to be made; and, apart from the fact that both businesses are listed in the same paragraph, the publication clearly specifies that the businesses are in different locations, that they offer different types of accommodations, that they operate upon different plans, that is, American and European, and that appellant's rates are $18 per day and up, while appellee's are from $3 to $5 per day.

In its amended answer filed in the court below, appellee set up the fact that following the institution of the suit by appellant, it had altered the sign located at its place of business by adding thereto the word, "Nanini's" so that it then read "Nanini's Desert Lodge," instead of "Desert Lodge" as theretofore. Upon the trial, appellee offered evidence of this fact,

as well as evidence to the effect that at the time of trial it was using the name "Nanini's Desert Lodge" on notices posted in its cottages for the attention of guests and on stationery and other supplies furnished to guests as a part of appellee's service. Appellee's manager testified that this action had been taken and that the business was thenceforth to be conducted under the name "Nanini's Desert Lodge," not because appellee had ever infringed or intended to infringe upon the business of appellant, but solely in an effort to satisfy appellant.

From the foregoing evidence, the trial court made, among others, the following specific findings of fact:

"1. The plaintiff has not suffered any damage of any kind.

"2. No person has been deceived into trading with either the plaintiff or the defendant when he intended to trade with the other party.

"3. No person has made inquiry of either the plaintiff or the defendant when he thought he was making inquiry of the other."

"6. No attempt of any kind has been made by Mr. Nordale, the manager of the defendant's business, to deceive anyone, as is clearly shown by his correspondence with Duncan Hines.

"7. At the time that the defendant adopted the name of 'Desert Lodge,' its business did not in any way compete with the business of the plaintiff, as the plaintiff only accepted lodgers who desired meals at a price of about $18.00 per day for a couple, whereas the defendant only accepted lodgers without meals, at a price of $3.00 to $5.00 a day for a couple.

"8. There is not now any competition between the plaintiff and the defendant insofar as price range is concerned, and the plaintiff admits that as soon as the present war emergency is over he is going back to his original plan of furnishing lodging only with meals.

"9. Any incidental confusion on the part of messengers, *et cetera,* arising from possible similarity of names is absolutely negligible."

"15. In all the advertising introduced by the plaintiff into the case he specified that his services included lodging with meals."

"17. Defendant's business is located on a through highway, with an obvious appeal to the transient tourists, whereas plaintiff's business is in a secluded spot, away from the through highway."

"19. There was no confusion in the listing in Duncan Hines' book, because his description of location and price and services offered clearly distinguished the services offered by the two businesses.

"20. The defendant's business is not advertised in any of the pay directories in which the plaintiff has inserted his advertising.

"21. The plaintiff has built up a very extensive and exclusive clientele, who are obviously people of great discernment and are the type of people who could not, by the wildest stretch of the imagination, be deceived by any activities or business advertisements carried on by the defendant, as shown by the evidence in this case."

 There are four assignments of error, but they may be reduced to the proposition that the evidence does not sustain the trial court's findings of fact, and that such findings do not sustain the judgment. In deciding the cause, of course, we must give effect to the well-established principle that if the findings of fact are supported by any reasonable evidence, they must be upheld, *Viliborghi* v. *Prescott School Dist.*, 55 Ariz. 230, 100 Pac. (2d) 178; *Kenton* v. *Wood*, 56 Ariz. 325, 107 Pac. (2d) 380; *Allen* v. *Whiting*, 58 Ariz. 273, 119 Pac. (2d) 240; and the equally well-established rule that we must assume that the trial court found, in addition to the express findings of fact appearing in the record, such additional facts as are necessary to sustain the judgment, if they are reasonably supported by the evidence, and not in conflict with the express findings. *Barth Mercantile Co.* v. *Jaramillo*, 46 Ariz. 365, 51

Pac. (2d) 252; *Hagan* v. *Cosper,* 37 Ariz. 209, 292 Pac. 1020.

■ While recent development of the law of unfair competition, due undoubtedly to the wholly proper conviction on the part of courts and lawyers that the law must keep pace with changing business methods and changing standards of commercial morality, has resulted in marked expansion of the field involving protection of interests in trade-marks and trade-names, it must be noted that the field is not limitless. It is not every appropriation of a trade-name by a second user that will evoke the protection of the courts. Under any of the authorities which may be found in this country at this time, the interest in a trade-name is protected with reference only to (a) competing goods, services or businesses, and (b) other goods, services or businesses which, in view of the designation used by the second user, are likely to be regarded by prospective customers as associated with the first user. Restatement, Torts, Vol. 3, § 730, p. 596; Annot. 148 A. L. R. 12 *et seq.*

■ The question before us in this case, therefore, is whether, on the evidence hereinbefore set out, the trial court was justified in finding that appellant and appellee are not in competition in marketing their respective services, and that there exists no reasonable likelihood that prospective customers will regard appellee's business as associated with appellant. We think the question must be answered in the affirmative.

As to the issue of competition, although the parties deal in what are in some respects similar services, it is plain that they do not solicit the same trade, nor do they solicit trade from the same customers. Accordingly, they are not engaged in competition. *Beech-Nut Packing Co.* v. *P. Lorillard Co.,* 3 Cir., 1925, 7 Fed. (2d) 967; *Astor* v. *West Eighty-Second Street Realty Co.,* 167 App. Div. 273, 152

N. Y. Supp. 631; *Code* v. *Seattle Theatre Corporation,* 162 Wash. 379, 298 Pac. 432; *Bank of Arizona* v. *Arizona Cent. Bank,* 40 Ariz. 320, 11 Pac. (2d) 953.

With regard to the likelihood that prospective customers will regard appellee's business as associated with appellant, we feel that the propriety of the trial court's finding upon that phase of the question is apparent when consideration is given to the vast difference which exists in the needs or wants of the prospective patrons of the respective businesses and to the totally different methods upon which the parties rely to attract patronage. In the normal conduct of appellant's business, his customers will be apprised of what he has to offer to them even before they leave their homes, and when they arrive to become his guests they will expect to be accommodated at a resort hotel, they will expect service on the American plan, and they will expect rates commensurate with the accommodations and service. Appellee's customers, on the other hand, will come in contact with its business as incidents in their travels, without performed expectations, and they will do business with appellee, or not, as what he has to offer accords with what they conceive to be their wants or needs at the moment. With this feature of the case in mind, the improbability that prospective customers will identify or associate appellant with the business of appellee seems obvious.

The soundness of the trial court's findings and judgment is enhanced by the absence from the case at bar of many of the considerations which have impelled the courts to grant relief in trade-name cases notwithstanding the parties were not in actual competition with each other. There is here no question of the possible expansion of appellant's business into the field occupied by appellee, since appellant admittedly intends no alteration of his business. Beech-Nut Packing Co. v. P. Lorillard Co., *supra; S. C.*

*Johnson & Son* v. *Johnson,* 2 Cir., 1940, 116 Fed. (2d) 427. The trade-names involved are, in their original senses, descriptive and not original, fanciful, or arbitrarily coined. *Arrow Distilleries* v. *Globe Brewing Co.,* 4 Cir., 1941, 117 Fed. (2d) 347; *Pabst Brewing Co.* v. *Decatur Brewing Co.,* 7 Cir., 1922, 284 Fed. 110; *California Packing Corporation* v. *Sun-Maid Raisin Growers,* D. C., 1934, 7 Fed. Supp. 497. Appellee's adoption of its trade-name was in good faith, without intention to injure appellant's business or to profit by appellant's reputation. Beech-Nut Packing Co. v. P. Lorillard Co., *supra; May* v. *Goodyear Tire and Rubber Co.,* D. C., 1935, 10 Fed. Supp. 249. There is no claim or evidence that appellee conducts its business in such manner as to injure or endanger appellant's good reputation. Bank of Arizona v. Arizona Cent. Bank, *supra.*

Appellee's action in adding the word "Nanini's" to its name, after suit had been brought, has not entered into our decision, since we are satisfied that the same did not affect the trial court's decision. We feel certain that if it had been the trial court's view that appellant would be entitled to the relief sought except for appellee's conduct in altering its name after the suit was filed, appellant would have had judgment below at least for costs.

The judgment of the superior court is affirmed.

STANFORD, C. J., and MORGAN, J., concur.

LaPRADE, J., being disqualified, JAMES A. WALSH, Superior Judge, was called to sit in his stead.