187 P.2d 648

**BOICE et al. v. STEVENSON et al.**

No. 4936.

Supreme Court of Arizona.

Dec. 8, 1947.

Knapp, Boyle, Bilby & Thompson, of Tucson, for appellants.

Clifford R. McFall, of Tucson, and Fennemore, Craig, Allen & Bledsoe, of Phoenix, for appellees.

STANFORD, Chief Justice.

The appellees herein-were the plaintiffs in the trial court and the appellants were the defendants, and for convenience we shall herein style them as such. Plaintiffs brought their action asking among other things that defendants be enjoined and restrained from using the name "Motor Supply of Nogales." The Motor Supply Company first opened business as a corporation in Phoenix in 1910. In 1913 plaintiffs H.

L. Stevenson, and Sylvia A. Craig, both being residents of Phoenix, Arizona, opened a partnership business in Tucson known as Motor Supply Company and conducted, expanded, and advertised their said business throughout the southern counties of Pima, Graham, Cochise and the County of Santa Cruz (the said counties being in the State of Arizona), and built up a valuable good will under the name of Motor Supply Company, and acquired and retained many hundreds of customers within and without the State of Arizona, many of whom are located in the County of Santa Cruz and in the City of Nogales, Nogales being located in and being the county seat of Santa Cruz County, Arizona.

Sylvia A. Craig died on June 8, 1938, and thereafter Robert A. Craig, her husband, succeeded to her interest in the business and the business was continued under the firm name of Motor Supply Company, a partnership. January 1, 1940, Robert A. Craig sold his one-half interest to plaintiff H. L. Stevenson. At this time H. L. Stevenson and Naomi Stevenson were husband and wife and as co-partners have conducted said business as Motor Supply Company within the territory described and with branch stores in Cochise and Graham counties in Arizona, having an agent to travel the area heretofore described. H. L. Stevenson testified that he had been connected with the Motor Supply Company since 1911; that the Motor Supply Company was opened in Phoenix in 1910, and

is a corporation, and when the business was opened in 1913 the respective parties of the Motor Supply Company located at Tucson were the owners of the controlling stock of the corporation, and the name applied to the Tucson business was with the consent of the corporation; that H. L. Stevenson owned at the time of trial three-fourths of the Motor Supply Company corporation. Since July, 1945, plaintiffs have operated a branch store at Nogales, Arizona, under the name of Motor Supply Company. Before that time they sold their supplies by a traveling salesman.

Since 1934, defendant Charles G. Boice has been engaged in the automobile accessory business in the City of Nogales, Santa Cruz County, Arizona, located on the border of Mexico, and was a regular customer of plaintiffs, and knew that plaintiffs were serving a trade in Nogales and its County of Santa Cruz and northern Mexico. But in 1944, Boice extended his business and opened in a new location in Nogales under the name of Motor Supply of Nogales. Defendant J. H. Barbee was the manager and thereafter became a partner.

Defendants moved to dismiss the complaint filed by plaintiffs in the trial court upon the ground that "motor supply" were descriptive words in which the plaintiffs could not claim exclusive rights.

"The defendants filed an answer denying that plaintiffs had 'invented' the name 'motor supply', and in substance denying gen-

erally the allegations of the complaint, with the exception of such matters as were not in issue.

"A trial of the issues was had before the court sitting without a jury, and the court, on July 8, 1946, rendered an opinion that the plaintiffs were entitled to the exclusive use of the term 'Motor Supply' and entered its judgment on July 13, 1946, commanding the defendants to perpetually discontinue the use of the name 'Motor Supply of Nogales,' or any name containing the words 'motor supply'."

Defendants submit but two assignments of error and one proposition of law as follows:

## "Assignments of Error

"1. The Court erred in overruling plaintiff's Motion to strike the Amended Complaint for the reason that the Amended Complaint claimed that plaintiffs had established a right to the *exclusive use* of the term 'Motor Supply'. There is no jurisdiction in law or in equity for a court to wholly enjoin the use of such terms since words commonly descriptive of a product or of a business cannot be *exclusively* appropriated by anyone.

"2. The Court erred in entering a judgment awarding to the plaintiffs the *exclusive* use of the words 'Motor Supply' inasmuch as the evidence showed that the term was properly and commonly descriptive of the business done by the defendants and,

therefore, the Court was without jurisdiction to enter any judgment awarding *the exclusive use* of such terms to the plaintiff."

## "Proposition of Law

"A court of equity is wholly without jurisdiction to entertain a complaint or to enter a decree praying for or awarding to a merchant the exclusive use of terms which are in common use in the English language, and which are properly and correctly descriptive of the business done by all persons in a field competitive to plaintiffs' business."

To arrive at the point in issue, as claimed by appellants, they quote from the original leading case of Reddaway v. Banham, 1896 A.C. 199–222, 25 English Ruling Cases 193. The facts of that case in brief are that appellant had for many years manufactured a machine belting called "camel hair belting," and had established a trade over a period of twenty years in the selling of the belting in England, its colonies, and in foreign countries, The belting consisted of camel hair. A rival manufacturer began to manufacture and sell in the same field a belting designated as "camel hair belting." In the original trial in England, judgment was given to the appellant and an injunction was granted restraining defendants from the use of the words "camel hair." The English Court of Appeal reversed the trial court and the House of Lords on appeal reversed the English Court of Appeal. We now quote from various members of the House of Lords:

312

Lord Herschell: "What right, it was asked, can an individual have to restrain another from using a common English word because he has chosen to employ it as his trademark? I answer he has no such right; but he has a right to insist that it shall not be used *without explanation or qualification,* if such a use would be an instrument of fraud. It is not proposed, in the present case to prohibit the use of the words 'Camel Hair' altogether. In the case just referred to, the counsel for the plaintiff at the conclusion of the judgment, asked whether the substance of their Lordships' judgment was not that the defendants were not to use the name Thorley in connection with their cattle food. James, L. J., replied, 'We cannot prohibit them using the name if they use it in a way not calculated to mislead the public'. I say the same about the use of the words 'camel hair' in the present case."

Lord Macnaghten: "I am of the opinion that there is no such thing as a monopoly, or a property in the nature of a copyright, or in the nature of a patent, in the use of any name. Whatever name is used to designate goods, anybody may use that name to designate goods, always subject to this, that he must not, as I said, make directly, or through the medium of another person, a false representation that his goods are the goods of another person. That I take to be the law."

Lord Morris: "* * * A representation deceiving the public is and must be the foundation of the appellants' right to recover; they are not entitled to any monopoly of the name 'camel hair belting' irrespective of its deceiving the public, and every one has a right to describe truly his article by that name, *provided he distinguishes* it from appellants' make."

The gist of the holding in that case is that the House of Lords, as contended by appellants, "took special pains to say that they were not granting an exclusive monopoly of the English language to anyone."

Among other cases quoted by defendants is Furniture Hospital v. Dorfman, 179 Mo. App. 302, 166 S.W. 861, 862. This case is one where the furniture hospital, a corporation, sued for an injunction to restrain the use of the name of New York Furniture Company on the ground that it was an unlawful use of plaintiff's trade name. A demurrer to the petition filed by plaintiff was sustained and judgment given defendant, and, while the case was remanded for evidence, we believe the portions quoted by defendant state the case:

"As to what will constitute unfair competition by the unlawful use of a nonexclusive trade-name in its secondary meaning, no inflexible rule can be laid down. Each case is, in a measure, a law unto itself. Unfair competition is always a question of fact. The question in every case is whether or not, as a matter of fact, the name adopted by defendant has previously come to indicate plaintiff's business, and whether the public is likely to be deceived. 38 Cyc.

779; Sartor v. Schaden, 125 Iowa, 696, loc. cit. 701, 101 N.W. 511; Atlas Assur. Co. v. [Atlas] Insurance Co., 138 Iowa, 228, loc. cit. 232, 112 N.W. 232, 114 N.W. 609, 15 L.R.A.,N.S., 625, 128 Am.St. Rep. 189; O'-Grady v. McDonald, 72 N.J.Eq. 805, loc. cit. 807, 66 A. 175.

"Of course this rule is qualified by the further rule that names which are mere descriptive terms of the business and generic in their nature are not capable of being appropriated by any one. Hence, if the name sought to be protected and claimed to be infringed upon and unfairly used is one which may be used by every one in an honestly descriptive and nondeceptive manner, the court may declare, as a matter of law, that there can be no unfair competition in the use of such terms. For instance, no one could appropriate the name of 'Swedish Snuff Store' or 'Felt Hat Store,' 'Law Book Store,' 'Divinity Book Store,' or any such name as would simply notify the public that a particular class of business or merchandise was carried on or kept there. Choynski v. Cohen, 39 Cal. 501, 2 Am.Rep. 476.

\* \* \* \* \* \*

"\* \* \* In our opinion, it is, or at least it is not such a name so purely descriptive of the business as to be wholly publici juris, and to be declared such as a matter of law. \* \* \*"

Defendants quoted from 106 Wash. 72, 179 P. 120, at page 125. This was an action between Diamond Drill Contracting Co. v. International Diamond Drill Contracting Co., asking for a restraining order against the International Co. from the use of that name as an infringement. The trial court rendered its judgment in favor of the International Diamond Drill Contracting Co.; appeal was taken; and the decree of the trial court was cancelled and the case dismissed. We quote that portion of the case referred to by defendants. "Those cases is which we have heretofore protected a trade-name from unfair competition are cases in which to the words descriptive of the business has been added some fanciful word or a word of personal or geographical significance, and partaking of the nature of a fanciful name, the entire name thus becoming something more than a mere description of the business in which the company using it was engaged. In these cases the originality of such combination has been protected. These cases are distinguished from the case at bar by the fact that here the respondent has added nothing to words merely descriptive of its business. \* \* \*" We find that the rule laid down in the Diamond Drill case has been qualified by other and more recent State of Washington cases, as we shall hereafter mention.

Defendants mention three matters decided by this court in our case of Bank of Arizona v. Arizona Central Bank, 40 Ariz. 320, 11 P.2d 953, being as follows:

1. "The court first declared that the plaintiff need not wait for actual injury before bringing action to restrain use of the similar business name."

2. "It then decided that the two banks were not and probably would not, serve the same competitive area,"

3. "and finally concluded that there was no showing of reasonable expectancy of injury to the plaintiff."

Defendants admit that in the instant case "both businesses are serving the same competitive area, and that there has been some confusion of identity between the two concerns in matters of mail deliveries, telephone messages, etc."

In our case of Lininger v. Desert Lodge, 63 Ariz. 239, 160 P.2d 761, 764, defendants point out that the case did not decide the point involved in the instant case, but this court did say, however, "* * * The trade names involved are, in their original senses, descriptive and not original, fanciful, or arbitrarily coined. * * *" and defendants maintain "that this court has inferred that purely descriptive terms are not within the field of appropriate trade marks or trade names."

Bernstein v. Friedman, Wyo., 1945, 160 P. 2d 227, 230, very well explains the view that opposes defendants. In this case,

"Plaintiff started to use the name Western Ranchman Outfitters in November, 1934, then conducting his business at 312 West 16th Street, in the City of Cheyenne, Wyoming. The place of business was moved to 210 West 16th Street in 1941. Defendant's place of business is at 201 West 16th Street, across the street from plaintiff's store, and three doors further East on the corner of 16th Street and Capitol Avenue. Plaintiff has signs on his building prominently showing the trade name adopted by him. The defendant, on July 15, 1943, placed a prominent sign on the East side of his building, some 15 inches in width reading: 'Men's Wear—Western Outfitters (with a symbol of a ranchman or cowboy between these words)—Souvenirs.' On the corner of the building is a prominent neon sign, reading 'The Hub,' and beneath it 'Army,' and beneath that 'Store.' On the front of the building, facing 16th Street, is a prominent sign reading 'Army Store.' The sign on the East side of the building, including the words, 'Western Outfitters,' is the main sign visible to those coming from the railroad stations in Cheyenne, and according to some of the testimony, is the sign which attracts special attention. * * *

* * * * * *

"* * * Counsel for the defendant in this case states that the vital question in this case is as to whether or not the defendant can be prevented from advertising that he has Western outfits for sale. The question is quite easily answered. He cannot be prevented from doing so. But the trouble lies in the manner in which he has done so. The particular combination of the words used by him caused the trouble. He could advertise his goods as effectively in a number of other ways as, for instance,

by a sign reading 'Sellers of Western Ranchmen's Goods,' or 'Furnishers of Ranchmen's Goods' or 'Ranchmen's Goods for Sale,' or 'Ranchmen's Goods Sold.' But, instead of using one of these simple expedients which would have prevented this law suit, he used a combination of words almost identical with those used by the plaintiff, and in a sign which stands out distinctly and prominently, close to the plaintiff's store, and at a place where thousands of people going to and from the railroad centers of the City, or coming to the City from the East and South on two of its main roads of travel, can clearly and distinctly see it, and which, according to the testimony of the witnesses, attracts special, and, in fact, the only attention. Looking at the signs of the parties, the court, we think had a right to find that it is altogether likely that the defendant deliberately copied from the plaintiff, and we cannot say that it was not justified in finding that the only likely purpose was to deceive or at least to cause confusion, and if that was in the mind of the defendant himself, why should not the trial court have the right to find that confusion and deception would result? It is not necessary that instances of actual deception be shown. 'It is enough if, in the opinion of the judge, the symbol or device or get-up used by the defendant is one which so closely resembles the symbol, device or get-up used by the complainant as to be likely to deceive the public.' * * * * "

The case of Grant v. California Bench Co., 76 Cal.App.2d 706, 173 P.2d 817, 818, gives a rule or test case very pertinent in the handling of this case. We quote: "Unfair competition is a question of fact and no inflexible rule can be stated as to what conduct will constitute unfair competition. The universal test is whether the public is likely to be deceived. * * * "

But in Foss v. Culbertson, 17 Wash.2d 610, 136 P.2d 711, 717, a group of rules is set forth:

"The basis of this type of action is unfair competition. It is evident that no inflexible rule or set of rules can be laid down as to just what conduct will constitute unfair competition. Whether or not there was unfair competition, is a question of fact, and this being so, each case is in a measure a law unto itself. Olympia Brewing Co. v. Northwest Brewing Co., 178 Wash. 533, 35 P.2d 104.

"We have had before us many cases involving this general question. The factual situations presented have, as might be expected, differed in each case. However, from these cases it is evident that we have recognized that there are certain well established rules to be considered in connection with this type of case.

"In the late case of Seattle Street Railway & Municipal Employees Relief Ass'n v. Amalgamated Ass'n, etc., 3 Wash.2d 520, 101 P.2d 338, this court, after a very ex-

haustive study of our cases, announced that there were eight general rules which might be deduced. The opinion then proceeds to set out these different rules, citing our cases which sustain each one. In order that we may have these rules before us in considering this case, we again state the following rules as applicable to this type of case.

"(1) The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business. This rule is basic, and is supported by all the cases cited in the above case.

\* \* \* \* \* \*

"(6) A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other. Rosenburg v. Fremont Undertaking Co., supra, [63 Wash. 52, 114 P. 886]; Electric Supply Co. v. Hess, 139 Wash. 20, 245 P. 27, 28.

"(7) The rule is no different when the name or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning."

The testimony shows that plaintiff had a representative who traveled out of the Tucson office in different counties in southern Arizona except Yuma, and in the states of Sonora and Sinaloa, Mexico, Nogales as stated being on the border between Santa Cruz County, Arizona, and the State of Sonora, Mexico. The testimony also shows that there was considerable confusion in the matter of the mail and in other ways. Plaintiffs' store in Nogales in a certain length of time received the wrong statements amounting to $700 in as many as twenty-five different instances that should have gone to the defendants, and there was a great deal of confusion in the matter of the mail; also confusion in the matter of picking up orders by a trucking outfit to make deliveries.

The sign upon the plaintiffs' store was "Motor Supply Company" and the sign upon the defendants' store was "Motor Supply of Nogales." The words "of Nogales" were in smaller size as to the sign upon the store than the words "Motor Supply," being about five times smaller than the letters "Motor Supply," and also the words "of Nogales" were placed under the words "Motor Supply." The store of the defendant was approximately 2½ blocks away from the store of the plaintiff and was on a different street.

In the findings set forth in the judgment and decree of the trial court is the following: "That the said name adopted and used by the defendants is confusingly similar to the plaintiff's trade name and that the use of the same by the defendants in the manner as shown by the evidence in the case

was and is necessarily deceptive, calculated to deceive or mislead the public, and is an infringement upon the plaintiffs' exclusive right to the use of their said name, and constitutes unfair competition; * * *."

The area or territory covered by the trade name of plaintiffs between Tucson and Nogales, Arizona, is sparsely settled. Much of it is grazing land and in its virgin state. The area that the trade name in question covers that lies south of the border is likewise sparsely settled, and, "all in all," a territory that would not be comparable to any of our large American cities, although Nogales, Arizona, is a flourishing place and has a thriving business from Mexico, as well as a large tourist trade from the United States, and is one of the most prosperous cities on the border.

 In reference to the area and extent of protection afforded a trade name, we quote from Restatement, Torts, vol. 3, sec. 732: "The interest in a trade-mark or trade name is protected, * * * with reference * * * to territory from which he receives or, with the probable expansion of his business, may reasonably expect to receive custom in the business in which he uses his trade-mark or trade name, and in territory in which a similar designation is used for the purpose of forestalling the expansion of his business."

Likewise, on the same subject, we quote from 63 C.J., sec. 20, p. 323: "A trade name acknowledges no territorial boundaries of municipalities, or states, or nations, but extends to every market where the owner's reputation has gone and his goods become known. * * *"

In Jackman et al. v. Mau, Cal.App., 177 P.2d 599, 602, plaintiffs appeal from an adverse judgment in an action for an injunction to restrain the defendant from using the name Jackmau of Hollywood in connection with his business on the ground that such name conflicted with plaintiff's prior established trade names of "Jackman," "Jackman from California," and "Jackman of Hollywood." In part the court, in that case, said:

"That a property right attaches to a trade name which has been used for a number of years to identify and designate the business conducted, has long been the law in California. In the instant case there is no denial that the trade names 'Jackman', 'Jackman from California'; and 'Jackman of Hollywood' have been used by plaintiffs for a number of years to designate the business which they were conducting. Under such circumstances, the law recognizes and will protect the property right which attaches to the name. Ward-Chandler Bldg. Co. v. Caldwell, 8 Cal.App.2d 375, 377, 47 P.2d 758.

\* \* \* \* \* \*

"The true test is—has the defendant 'adopted a name which prima facie is broad enough in its concept to be mistaken by the ordinary unsuspecting person for the insti-

tution created by the incorporators of the plaintiff'. * * *"

The trial court was reversed in this case on the ground that there was an infringement on plaintiffs' name.

The plaintiff H. L. Stevenson testified that, over the territory heretofore described, he had transacted business through salesmen for a period of more than twenty-seven years. In that respect, we quote from the case of Winfield v. Charles, Cal. App., 175 P.2d 69, 70, being a case where the defendant Emerson Winfield Charles appealed from a judgment in favor of the plaintiff Edward A. Winfield, enjoining the defendant from using the name "Winfield," or any simulation thereof, as a part of any name used by him except the name of "Emerson Winfield Charles."

"* * * Furthermore, in the interest of fair dealing courts of equity will protect the person first in the field doing business under a given name to the extent necessary to prevent deceit and fraud upon his business and upon the public. For this purpose the second in the field may be enjoined from using the name, even though the principal places of business are at a considerable distance from each other. Benioff v. Benioff, 64 Cal.App. 745, 748, 222 P. 835. 'No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case is, in a measure, a law unto itself. Unfair competition is a question of fact. * * *'"

The Supreme Court of Iowa in Iowa Auto Market v. Auto Market & Exchange et al., 197 Iowa 420, 197 N.W. 321, 322, found that the appellant had filed in 1920 a statutory trade-mark consisting of the words "Auto Market," and had done business for a few years as Iowa Auto Market. The appellant asked a decree enjoining the defendant from using the name of "Auto Market & Exchange," or any imitation thereof, or any name in which the words "Auto Market" appear as a part. The trial court had denied relief. After stating the general rules applicable that: "Words that are generic, or which in their primary meaning are merely descriptive of the goods or business to which they are applied, or are in common use for that purpose, or which convey facts applicable with equal truth and right to others, cannot be exclusively appropriated as a trade-mark. It has been frequently said that no one can secure a monopoly upon the adjectives of the language. * * *" the court goes on to say: "The words 'Auto Market' are merely descriptive of the thing sold and the place where sold. Taken either singly or in combination they are generic. They are merely descriptive of the business there carried on. They are no more distinctive of the article sold by appellant or its place of business than would be the words 'shoe store' or 'meat market.' They cannot constitute a trade-mark or trade-name, the right to the exclusive use of which will be secured to one in preference to others engaged in the same business. * * *"

This Iowa case is applicable for the reason that a trade name when it has acquired a secondary meaning in a particular trade area will be protected to the same extent that a trade-mark is protected, in order to avoid confusion to purchasers and diversion of custom. See Restatement, Torts, Vol. 3, sec. 715(d).

"By prior adoption and use one does not acquire the exclusive right to use as a trade-name words properly descriptive of the business in which he is engaged; but if another, engaged in a like business, subsequently makes use of such descriptive words in his trade-name, he must *use them in such combination that the two trade-names will be fairly distinguishable.* * * *" Jordan Sulphur Springs & Mud Bath Sanitarium Co. v. Mudbaden Sulphur Springs Co. et al., 135 Minn. 123, 160 N.W. 252, 253. Drugs Consolidated, Inc., v. Drug Incorporated, 16 Del.Ch. 240, 144 A. 656, 657. (Emphasis supplied.)

With these principles in mind we are of the opinion that the findings of the trial court that the name adopted by defendants was confusingly similar to plaintiffs' trade name, and that the use of the same by defendants was, and is, necessarily deceptive and calculated to deceive and mislead the public, were justified by the evidence and plaintiffs are entitled to injunctive relief. Since the words "motor supply" are purely descriptive of plaintiffs' business and designate generally the merchandise sold by them, they are publici juris. These words are not novel or figurative and do not constitute a fanciful name; nevertheless, they have acquired a secondary meaning so far as plaintiffs' business is concerned which is entitled to protection from unfair competition. If defendants' sign on the building read "Motor Supply Company of Nogales"—all in the same size lettering—the sting would nevertheless be present. It might readily be conceived that the Motor Supply Company of Nogales was merely a branch of the Motor Supply Company of Tucson. Still we conclude that the court went too far in its judgment when it absolutely precluded defendants from using these common, ordinary, generic, descriptive words in its business name. Plaintiffs are not entitled to have these common words withdrawn from the English language and dedicated to their sole use unless it can be shown that even with a different arrangement of the words, styling and lettering, it will be impossible to remove unfair competition by their use.

Plaintiffs are entitled to the exclusive right to use their trade name "Motor Supply Company" in the trade area under consideration; however, that portion of the judgment enjoining defendants from adopting any trade name including the words "motor supply" should be omitted. The judgment appealed from, in part, reads as follows:

"Wherefore, it is Ordered, Adjudged and Decreed:

320

"That the defendants are hereby commanded forthwith to discontinue the use of the name 'Motor Supply of Nogales' as a trade name or the name of the business conducted by them in the southern counties of Arizona, including the counties of Pima, Graham, Cochise and Santa Cruz, and the northern states of the Republic of Mexico, including the west coast of Mexico;

"That the defendants, their agents, servants and employees and all others acting under or for them be and they and each of them hereby are enjoined and restrained perpetually from using the trade name 'Motor Supply of Nogales' *or any similar name containing the words 'Motor Supply,'* or any name so nearly similar to plaintiffs' said name in sound or appearance as to lead to confusion and uncertainty from the use thereof in the minds of the public or of customers of plaintiffs in the trading area above described or the territory wherein the business of the plaintiffs may be normally expanded." (Italics ours.)

In conformity with sec. 21-1832, A.C.A. 1939, empowering this court to affirm, reverse, or modify any judgment on appeal, it is hereby ordered that the foregoing judgment be and the same is hereby modified by striking therefrom the italicized words "or any similar name containing the words 'Motor Supply,'" and as so modified the judgment is affirmed; appellee to recover his costs.

LaPRADE and UDALL, JJ., concur.