267 P.2d 725

**O'HARA v. LANCE et ux.**
No. 5700.

Supreme Court of Arizona.

March 1, 1954.

Rehearing Denied March 23, 1954.

Bumstead & Linsenmeyer, Phoenix, for appellant.

McKesson & Renaud, Phoenix, for appellees.

TULLAR, Superior Court Judge.

Defendant-appellee General W. Lance owned and operated a business known as the Ace-Lance Refrigeration Company, established in Phoenix in 1942. In 1946, he and plaintiff-appellant Richard C. O'Hara entered into a partnership agreement and continued in the same business as Ace-Lance & O'Hara Refrigeration Company.

On July 21, 1949, an agreement to dissolve the partnership was reduced to writing, Lance selling all partnership assets, including good will, to O'Hara. The former agreed not to compete with the latter for a period of two years, and granted to O'Hara the exclusive right to the firm name, except for a condition that after December 21, 1950, O'Hara might not further use Lance's name without his consent.

On May 12, 1951, O'Hara sued to enjoin alleged violation of the agreement not to compete, for damages for breach of the agreement, and to restrain Lance from using the word, "Ace," in the firm name of any refrigeration business in Arizona. Lance's wife and the Mountain States Telephone & Telegraph Company were also named defendants.

In a pleading incorrectly called a "cross-complaint," but which is a counterclaim, Lance prays to restrain O'Hara from use of "Ace," and for damages, on the theory that the sale to O'Hara did not include the right for O'Hara to use "Ace" after December 21, 1950.

The case was tried to the court,—a jury was impaneled, but discharged by stipulation during the course of the trial,—judgment was entered granting defendant, Lance, the right to use "Ace," and denying that right to plaintiff, O'Hara. No damages were awarded. Motion to vacate or modify judgment was denied, and this appeal followed.

From the assignments of error and propositions of law as a whole it may be gleaned that O'Hara feels aggrieved solely by the award of the exclusive use of "Ace" to Lance instead of to O'Hara. His prayer to restrain a breach of the agreement not to compete has been disposed of by passage of time. No appeal is, or could successfully be, taken from the denial of monetary damages to either party, no proof of any having been made.

The first and primary step is to determine what was bought and sold at the time of the dissolution of the partnership. Happily, the agreement of the parties is explicit. Lance, "the retiring partner," is being paid, "for his share in the business and the capital, stock, equipment, effects and good will thereof." The agreement recites that valuations and estimates have been placed upon these items, and agreed to, specifically including the good will, and a balance has been struck.

Definitions of good will are legion. This court has said, citing cases, that, speaking generally, good will is a fleeting, intangible something; it is not corporeal property; it is that asset, intangible in form, which is an element responsible for profits in a business; it may be a valuable asset and is a subject of bargain and sale. Jacob v. Miner, 67 Ariz. 109, 120, 191 P.2d 734.

In Ely Lilly & Co. v. Saunders, 216 N.C. 163, 4 S.E.2d 528, 532, 125 A.L.R. 1308, it was said:

"* * * This good will is as much property as is coal or pig-iron or wheat, subject to audit, appraisal, taxation, purchase and sale, and is the most valuable asset of many businesses. * *"

All courts recognize that the firm's name and its good will are inextricably intertwined. Judge Rutledge said that first among the varied elements that hold out to customers the "lure to return" is an established trade name. Burke v. Canfield, 74 App.D.C. 6, 121 F.2d 877, 880.

Judge Cardozo expressed it thus:

"* * * Men will pay for any privilege that gives a reasonable expectancy of preference in the race of competition. * * * Such expectancy may come from succession in place or name or otherwise to a business that has won the favor of its customers. It is then known as good will. * * *" In re Brown's Will, 242 N.Y. 1, 150 N.E. 581, 582, 44 A.L.R. 510.

Harry D. Nims, in his authoritative text, "Unfair Competition and Trade-Marks," 4th Ed., pp. 79, 80, states:

"* * * since it (good will) has value and is bought and sold, it must be and is represented, recognized and identified by symbols. Names are symbols: brands and trade insignia also. The friendship and affection of the public for a public servant is expressed by use of his name. So also of the popularity and good repute of a business house; it is expressed by reference to, or use of its name, its trade-marks and its trade symbols."

On pages 107, 108, of the same work he says:

"The clearest way to indicate successorship is to use the trade names and and trade-marks associated with the purchased business. The exclusive right to use such names and marks belongs to the purchaser of the good will. * * *"

As the court points out in In re Brown's Will, supra, one of the chief elements upon any sale of good will is continuity of name. The firm or trade name is, therefore, regarded as inseparable from the good will, and is generally held to be transferred when the business and good will are transferred. Brass & Iron Works Co. v. Payne, 50 Ohio St. 115, 33 N.E. 88, 19 L.R. A. 82; Richter v. Richter, 202 Ga. 554, 43 S.E.2d 635, 173 A.L.R. 436; Cardinal v. Taylor, 302 Mass. 220, 19 N.E.2d 58; Smith v. David H. Brand & Co., 67 N.J.Eq. 529, 58 A. 1029; Restatement, Torts, vol. 3, p. 675, sec. 775; 52 Am.Jur. 530, Trademarks, sec. 38; 40 Am.Jur. 270, Partnership, sec. 200.

In the law of partnership, it is the rule that, in the absence of agreement to the contrary, a sale of assets and good will of a commercial partnership carries with it the right to use the partnership name. Slater v. Slater, 175 N.Y. 143, 67 N.E. 224, 61 L.R.A. 796; Southern Scrap Material Co. v. Smith, 253 Ala. 356, 44 So.2d 754; 40 Am. Jur. 314, Partnership, sec. 268. We are not here dealing with a "professional" partnership (see, e. g., Hunt v. Street, 182 Tenn. 167, 184 S.W.2d 553), wherein the law is quite different.

A conveyance of the good will of a business carries with it an implied covenant to do nothing which would derogate from the grant. Sheehan v. Sheehan-Hackley & Co., Tex.Civ.App., 196 S.W. 665; Jacob v. Miner, supra. If the vendor of the good

will re-engage in business, it is his duty to conduct his new business in such a way that it will not appear to be a continuation of the business that he has sold. Nims, supra, 106. The vendor has a duty, not only to his vendee, but to the public, not to confuse or deceive the customer into thinking he is in one place of business when he is in another. This type of confusion and deceit is the keystone of unfair competition. And, we have previously pointed out, this is the universal test for the presence of unfair competition: Is the public likely to be deceived? Boice v. Stevenson, 66 Ariz. 308, 187 P.2d 648, citing Grant v. California Bench Co., 76 Cal.App. 2d 706, 173 P.2d 817; Bank of Arizona v. Arizona Central Bank, 40 Ariz. 320, 11 P.2d 953.

So in this case, when Lance included in his sale the good will of the business, he sold to O'Hara the right to the use of the firm name, Ace-Lance & O'Hara Refrigeration Company. And, as the agreement recites, this was "to hold the same unto O'Hara absolutely."

█ This does not necessarily mean, in law, that Lance has parted with the right henceforth to use his own personal name. Indeed, there is a presumption that no one intends to part with this right, and that an assignment of good will does not, ipso facto, confer upon the assignee the exclusive right to the use of assignor's personal name. Nims, supra, 109. While one may sell his own name as a trade name servient to the business to which it is attached, the intent

so to divest oneself must clearly be shown. Guth Chocolate Co. v. Guth, D.C., 215 F. 750; Russia Cement Co. v. Le Page, 147 Mass. 206, 17 N.E. 304; 63 C.J. 518, Trademarks, sec. 218.

█ The rule that a sale of partnership good will carries with it the right to use the partnership name is subject to the limitation that a man has the right to use his own name in business unless he has expressly covenanted otherwise, so long as he is not guilty of unfair competition or deceptive practices. Karsh v. Haiden, Cal.App.1953, 260 P.2d 633; Iowa Seed Co. v. Dorr, 70 Iowa 481, 30 N.W. 866, 59 Am.Rep. 446.

As if cognizant of such rule of law and presumption, the parties hereto also stated their agreement in this regard. "Lance grants to O'Hara," the dissolution agreement provides, "the exclusive right in and to the company name of 'Ace-Lance & O'Hara Refrigeration Company,' or 'Ace-Lance & O'Hara,' the said right to last until December 21, 1950. That is to say, O'Hara may use this company name until then, exclusively, but after that time may not further use Lance's name without the consent of Lance."

█ Lance by this provision sold to O'-Hara the exclusive use of his personal name as a trade name in the refrigeration business, but only for a limited time. The time limit having expired, there is now no restraint upon Lance's use of his personal name for any lawful purpose he may desire, so long as he does not transgress his obliga-

tion not to interfere with O'Hara's right to receive the benefits of his purchase.

But what is Lance's personal name? To support the judgment of the trial court it must be determined that it is "Ace-Lance" or, at least, some combination of names or initials commencing with "Ace". There is no scintilla of evidence in the record, however, to support such a determination. The evidence is, in fact, wholly to the contrary. He testified that his name appears on his birth certificate as "General W. Lance," that he commenced using the name, "Ace," at the time he set up in the refrigeration business as a combination with his personal name to acquire a trade name for prior listing in alphabetical advertising. When the parties went into partnership he signed his name to the agreement, "General W. Lance," and when they dissolved he signed "G. W. Lance." Both of these signatures were under oath. That many persons called him by the nickname, "Ace," is of no consequence. Lance recognized that his name did not contain an "Ace" in it by going to court, shortly before this suit was filed,— and long after the dissolution of partnership,—and having his name legally changed to "General W. (Ace) Lance."

The hyphen in the firm name, both before and during the existence of the partnership, is significant. It confirms Lance's own testimony that his name was not "Ace Lance," but that he adopted "Ace" for business benefits.

A glance at almost any telephone directory will demonstrate the popularity of the word, "Ace," in trade names. It connotes supremacy in the field; it is short; as has been pointed out, it has the virtue of priority in alphabetical listings; it is readily recollected. The mnemonic frailty for personal names is commonplace. That the previously satisfied customer might recall only that his dealings were with a refrigeration concern embodying "Ace" in its trade name is very likely. "Ace Lance," furthermore, would usurp the alphabetical priority of "Ace O'Hara," a benefit which the latter has bought and paid for. Thus inevitably the public is and will be confused and misled by the two "Aces," and to the same extent O'Hara is and will be injured. See Boice v. Stevenson, supra, citing Seattle Street Railway & Municipal Employees Relief Ass'n v. Amalgamated Ass'n, etc., 3 Wash.2d 520, 101 P.2d 338.

That Lance may have recorded his firm name, or any name, with the secretary of state is immaterial. It can add nothing to his common-law rights as they existed at the time of dissolution, nor can it cause any diminution in the common-law rights of O'Hara. Peterson v. Lightfoot, 47 Cal.App. 646, 191 P. 48.

Fact and law conclusively show O'Hara's right in and to the use of the word "Ace," in the refrigeration business in his trade area. Lance does not have the same right.

 O'Hara has prayed for state-wide restraint. He is, however, entitled to protection only in the territory from which he received business or might reasonably be expected to receive business in the future. Boice v. Stevenson, supra, citing Restatement, Torts, vol. 3, p. 604, sec. 732. His protection should extend as far as his business reputation and his goods have become known. 63 C.J. 323, Trade-marks, sec. 20.

The widest area to which O'Hara is entitled to protection under the testimony in this case is the area served by the Phoenix metropolitan area telephone directory. There is no evidence of custom, actual or potential, beyond this point.

The judgment of the trial court is reversed with directions to dissolve the restraining order and enter judgment in favor of plaintiff, Richard O'Hara, and against the defendants, General W. Lance and Vera Lance, his wife, granting to plaintiff the right to use the name, "Ace," and granting to plaintiff an injunction restraining the defendants, General W. Lance and Vera Lance, his wife, or either of them, and all persons acting for them or under them, from using the name, "Ace," in any refrigeration business within the area served by the Phoenix metropolitan area telephone directory.

PHELPS, C. J., and STANFORD, LA PRADE, and UDALL, JJ., concurring.

NOTE: Justice WINDES being disqualified, having been trial judge on the case in the court below, the Honorable ROBERT S. TULLAR, Judge of the Superior Court of Pima County, was called to sit in his stead.