SHEEHAN v. SHEEHAN-HACKLEY
& CO.　(No. 776.)

(Court of Civil Appeals of Texas. El Paso.
June 7, 1917.　Rehearing Denied
June 28, 1917.)

1. GOOD WILL ☞6(4) — SALE — RESUMPTION
OF BUSINESS.

In the absence of an express covenant, there
is nothing to prevent the assignor of a business
and its good will from conducting a competing
business in the same locality.

[Ed. Note.—For other cases, see Good Will,
Cent. Dig. § 5.]

2. GOOD WILL ☞6(4) — SALE — RESUMPTION
OF BUSINESS.

One who has transferred his exclusive agen-
cies, terminable at will, for manufacturers of
and dealers in building and fireproofing materi-
al, together with the good will, without any ex-
press agreement not to engage in competing
business in the same territory, should not be
enjoined on his resumption of business from
representing his former customers, since he is
lawfully engaged in business and such injunc-
tion would deprive the manufacturers and deal-
ers of their right to deal with him, if they desire
to do so.

[Ed. Note.—For other cases, see Good Will,
Cent. Dig. § 5.]

3. GOOD WILL ☞6(4) — SALE — SOLICITING
FROM CUSTOMERS.

One who has transferred his exclusive agen-
cies, terminable at will, for manufacturers of
and dealers in building and fireproofing material,
together with the good will, without any express
agreement not to engage in competing business
in the same territory, may be enjoined from
soliciting or inducing his former customers not
to do further business with his transferee, since
to induce them to cancel their agency contracts
with his transferee would injure the good will
of the business which he had transferred.

[Ed. Note.—For other cases, see Good Will,
Cent. Dig. § 5.]

4. GOOD WILL ☞6(1)—SALE—IMPLIED COVE-
NANT.

The grantor of the good will of a business
impliedly covenants that he will do nothing
which would derogate from his grant.

[Ed. Note.—For other cases, see Good Will,
Cent. Dig. § 2.]

5. GOOD WILL ☞6(4)—SALE—BUSINESS OUT-
SIDE STATE.

It is no defense, to an action to enjoin the
grantor of the good will of an exclusive agency
for manufacturers of and dealers in fireproofing
material from soliciting his former customers in
Mexico and neighboring states not to do fur-
ther business with his grantee, that latter, a
corporation organized in Texas, has no power
to do business in that territory, since such a
corporation may lawfully transact the business
for which it is organized in another state or
foreign country.

[Ed. Note.—For other cases, see Good Will,
Cent. Dig. § 5.]

6. CORPORATIONS ☞374—POWERS.

A corporation, organized for the purpose of
buying and selling goods by wholesale and re-
tail, has power to sell goods by taking orders
from the customer, sending them to the whole-
saler, and having him ship goods directly to
customer.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 1517, 1518.]

7. GOOD WILL ☞6(4)—ACTIONS—RELEVANCY.

In an action to enjoin one who has sold
his business and good will to a corporation from

soliciting his former customers or dealing with
them, the right of the corporation to oust him as
president and general manager, and stop his
salary, presents questions foreign to the issues
involved.

[Ed. Note.—For other cases, see Good Will,
Cent. Dig. § 5.]

Appeal from District Court, El Paso Coun-
ty; W. D. Howe, Judge.

Action by Sheehan-Hackley & Co., a cor-
poration, against J. P. Sheehan. From a de-
cree for plaintiff, defendant appeals. Decree
reformed and affirmed.

E. C. Wade, Jr., and Jones, Jones, Hardie
& Gambling, all of El Paso, for appellant.
Turney, Culwell, Holliday & Pollard, of El
Paso, for appellee.

HIGGINS, J.　This is an appeal from a
temporary injunction granted the appellee,, a
corporation, against Sheehan, restraining and
enjoining him from soliciting or attempting
to induce certain dealers and manufacturers
named in the petition to cancel the agency
and representation of said manufacturers and
dealers, or either or any of them, in that por-
tion of Texas west of the Pecos river, and in-
cluding El Paso county, Tex., and also the
states of New Mexico and Arizona, and the
states of Chihuahua and Sonora in the re-
public of Mexico, or from doing directly or in-
directly any act or thing to cause or induce
said manufacturers and dealers, or any or
either of them, from doing any further, other,
or additional business with the plaintiff,
Sheehan-Hackley & Co., Incorporated, and also
that the said defendant, J. P. Sheehan, be en-
joined and restrained from either directly or
indirectly representing said dealers and
manufacturers as above set out and named,
either as agent or otherwise, in the territory
above described, and from handling the prod-
ucts and goods of said manufacturers and
dealers either directly or indirectly in said
territory, and all including El Paso county,
Tex.　The material facts set up in the peti-
tion, and in support of which evidence was
adduced, are as follows:

Sheehan for a number of years had been
engaged in business as a salesman of build-
ing and fireproofing material, and represent-
ed a number of dealers and manufacturers of
such supplies.　He had the exclusive agency
and representation in the territory named in
the decree for the manufacturers and dealers
therein named.　On or about July 31, 1916,
appellee was incorporated under the laws
of Texas; Sheehan becoming a stockholder
thereof.　He also became its president and
managing director, and continued to act in
that capacity until March 2, 1917.　On this
last-mentioned date he was deposed from his
position as president and director.　He there-
upon resumed his former business, operating
in the territory mentioned, and endeavored
to take from appellee the right to handle the

products of the manufacturers and dealers named in the decree and in the territory mentioned. In his answer, Sheehan admits that, when he resumed business on his own account, he wrote and wired to said dealers and manufacturers, notifying them that he had severed active connection with appellee, and that he would be glad in the future to represent them in that territory, and that some of said parties had immediately wired him, requesting him to represent them, and at the same time wired appellee that, on account of the withdrawal of appellant from active participation in the affairs of the corporation, they canceled the agency contracts. At the date of the incorporation of appellee, Sheehan and his then partner, Hackley, for a valuable consideration, transferred to appellee all the agencies then held by either J. P. Sheehan, Sheehan, Hackley & Co., or Sheehan, Baldridge & Co., together with the good will.

The decree entered is twofold in its nature: First. It enjoins Sheehan from soliciting or inducing said dealers and manufacturers to cancel appellee's agency for and representation of them, and from doing anything to induce them from doing further business with appellee. Second. It enjoins Sheehan from representing said dealers and manufacturers, and from handling their goods and products.

[1] Though there is some conflict of authority, the more generally accepted doctrine is that, in the absence of an express covenant, there is nothing to prevent the assignor of a business and its good will from setting up and conducting a competing business in the same locality. 12 R. C. L. 988; 20 Cyc. 1279; High on Injunctions, § 1169; 14 Am. & Eng. Ency. Law, 1090; Von Bremen v. MacMonnies, 200 N. Y. 41, 93 N. E. 186, 32 L. R. A. (N. S.) 293, 21 Ann. Cas. 423.

[2] There was no express agreement upon the part of Sheehan that he would not again engage in a competing business in the territory mentioned in the decree, nor did he agree that he would not again represent said dealers and manufacturers. He merely transferred the agencies and the good will of his business. Under the rule stated, he was thus at liberty to engage in a business competing with appellee in the same territory. Obviously any one who desired to deal with him after he had established his competing business would have the right to do so. Whatever limitation there might be upon the right of Sheehan to solicit business from the customers of the old firm, arising out of the transfer of the good will of his old business, would not impair the right of such customers to deal with Sheehan, if they desired so to do. The agency contracts given by the dealers and manufacturers to Sheehan, and by him transferred to appellee, were terminable at the will of the dealers and manufacturers, and appellee had no property right thereto. Rice v. Angell, 73 Tex. 350, 11 S. W. 338, 3 L. R. A. 769; Smith v. Smith, 51 La. Ann. 72, 24

South. 618. When they were so terminated, the principals had the right to give them to any lawful competitor of appellee. Sheehan was lawfully engaged in business as a competitor of appellee, and could lawfully accept the agency contracts of said dealers and manufacturers, if tendered to him.

But that portion of the decree now under consideration would absolutely preclude appellant from representing the principals in the agency contracts and from handling their goods and products. Those principals are not before the court. They have an undoubted right to cancel the agency contracts given to appellee and grant same to any person lawfully engaged in business. Yet the effect of the decree is to preclude them from granting the same to Sheehan, and thus indirectly deprive such principals of a right which they have, and this, too, in a proceeding to which they are not a party. For the reasons indicated, we believe that portion of the decree went too far.

[3, 4] On the other hand, that portion enjoining Sheehan from soliciting or inducing the dealers and manufacturers to cancel appellee's agency for and representation of them, and from doing anything to induce them from doing further business with appellee, was properly entered. Sheehan conveyed the good will of his business, which carried with it an implied covenant that he would do nothing which would derogate from his grant. Dwight v. Hamilton, 113 Mass. 175. The definition of good will given by Judge Story has been frequently quoted with approval. It is thus stated:

"Good will may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices. Story, Partn. § 99."

The agency contracts acquired by appellee, with right of exclusive representation in certain territory, may well be considered as an advantage or benefit acquired by appellee within the scope of this definition, and to permit appellee, by solicitation, to induce the principals of the agency contracts to cancel the same and substitute him for appellee would injure the good will of the business which he had transferred. That he was properly enjoined from doing.

In support of the decree which was entered in this case, appellee relies upon Von Bremen v. MacMonnies, by the New York Court of Appeals, reported in 200 N. Y. 41, 93 N. E. 186, 32 L. R. A. (N. S.) 293, 21 Ann. Cas. 423. In that case one of the plaintiffs, Henry Von Bremen, and the defendants, Frank MacMonnies and Wm. Von Elm, entered into a copartnership under the firm name of Henry Von Bremen & Co., subsequently

changed to Von Bremen, MacMonnies & Co., for the transaction of an importing and commission business in buying, taking on commission, and selling fancy groceries. On February 10, 1909, the defendants sold to the plaintiff Henry Von Bremen:

"All their right, title, and interest in all the assets, good will, trade-marks, and other property of every name and nature, wheresoever located, of the firm of Von Bremen, MacMonnies & Co., together with all debts and things in action due or owing by or from any person or corporation to said firm."

Plaintiff Henry Von Bremen and Herman T. Asche under the firm name of Von Bremen, Asche & Co., succeeded to the business thus purchased by the plaintiff Henry Von Bremen individually. Thereafter the defendants formed a partnership for the transaction of a similar business. In the competition which thus arose, the defendants did or threatened to do various acts which had a tendency to lessen or destroy the good will of the business which they had acquired from the defendants by means of the transfer mentioned, and suit was filed to enjoin such acts. The trial court enjoined the defendants from using the cable address of the old firm, from using a list of 2,200 dealers in fancy groceries which had been compiled by the old firm, and from using labels, brands, etc., owned or controlled by the old firm. The decree also directed an accounting for the profits realized by the defendants and an assessment of the damages sustained by plaintiffs. Upon appeal by the plaintiffs to the Appellate Division, the injunction was extended so as to enjoin the defendants from soliciting orders for goods packed under special labels, trademarks, and brands devised for the old firm for special customers.

Upon appeal to the Court of Appeals, that court further extended the injunction, so as to forbid the defendants from soliciting business from any customers of the former firm of Von Bremen, MacMonnies & Co., and, as thus modified, affirmed the decree. It will be thus noted that the decree in Von Bremen v. MacMonnies did not go to the extent of the decree entered in the present case, and went no further than what we have indicated to be the proper decree to enter in this case. In answering certified questions propounded in the case, however, that court answered in the affirmative the fifth question propounded. That question was:

"Whether, upon the facts found in this case, the plaintiffs are entitled to an injunction against the defendants, restraining them from dealing with, or selling merchandise to, the person, firms, and corporations who were customers of or purchased merchandise from the firm of Von Bremen, MacMonnies & Co., of which the plaintiff Von Bremen and the defendants were copartners, and whose trade was solicited by the defendants since selling their interests in the said firm to the plaintiff Von Bremen."

The answer returned to that question would seem to have warranted a more extensive and far-reaching decree than the court actually entered. It seems to us that there is a conflict between the decree which the court actually entered and the answer to that question. But we are of the opinion that the decree which was entered was the only one which under the reasoning of the opinion could properly have been entered, and that such reasoning supports our view that the decree enjoining Sheehan from soliciting said dealers and manufacturers to cancel appellee's agency contracts was properly entered, and that it would be improper to enjoin him from representing them and handling their goods and products.

Appellee was incorporated for the purpose of "the buying and selling of goods, wares, and merchandise of any description by wholesale or wholesale and retail." Appellant insists that it was ultra vires of the corporation to act as manufacturers' agent in the territory mentioned in the decree, and therefore it was not entitled to maintain this suit for an injunction to aid it in transcending its corporate powers. With reference to the manner in which appellee transacted its business, the witness Hackley testified in its behalf as follows:

"We transact our business here in two ways; primarily, in three ways. We sell their goods directly to the customer, and they ship direct to the customer; the mills invoicing us, and we invoicing the customer. Then we sell the goods, the mills ship them direct to the customer, and invoice directly to the customer, paying us a commission on the sale; and the third way we buy the stock from the mills and sell from our stock."

[5, 6] It is lawful for a corporation chartered under the laws of Texas to transact business in another state or in a foreign country. It could therefore rightfully operate in the territory mentioned. It was incorporated to buy and sell goods. The power thus conferred is a general one and carries with it every right incident thereto. There is nothing in our corporation law which requires that the goods shall be kept in any particular way, or that they shall be handled in any particular way. It is just as much buying and selling of goods to take an order from the customer, send the order to the wholesaler, and have him ship direct to the customer, as it is to take the order and fill from a stock already purchased. The beginning and end is the same in each case, and the same result is accomplished.

[7] The matters referred to in the first proposition subjoined to the first assignment of error concern the internal affairs and management of the corporation. They present issues entirely foreign to the issues here involved. They can in no wise affect the rights involved in this litigation. Furthermore, there is evidence in the record from which the trial court would have been warranted in finding that the corporation had ample grounds for its action in ousting appellant as its president and managing director and stopping payment of his salary.

What has been said necessarily eliminates or disposes of the various other propositions

advanced by appellant. The decree entered in the court below will be reformed, by eliminating that portion thereof which enjoins appellant from representing the dealers and manufacturers named in the decree and from handling their goods and products. As thus reformed, the decree will be affirmed.

Reformed and affirmed.