WILLIAM W. FERRIS, Adm'r. vs. ALFRED W. PETT.

JANUARY 3, 1919.

PRESENT:  Parkhurst, C. J., Sweetland, Vincent, and Stearns, JJ.

(1)  *Contracts.  Good Will.  Improper Solicitation of Business.*

Where a vendor after disposing of the good will of a business interfered with the vendee's rights and sought to divert the business from the vendee, for his own benefit, such action amounts to a violation of the contract on his part, and he is not entitled to recover that portion of the contract price appertaining to the good will.

ASSUMPSIT.   Heard on exceptions of defendant and sustained.

VINCENT, J.   This is an action of assumpsit brought by William W. Ferris as administrator upon the estate of Henry M. Jewett to recover a balance alleged to be due to the plaintiff under a written contract.

Henry M. Jewett was a doctor of medicine and specialized in matters pertaining to the eye, ear, nose and throat.   The practice of Dr. Jewett, like that of other oculists, comprehended not only the treatment of the diseases incident to these parts but also the prescription of such glasses or lenses as he might find, from proper tests, were required to correct or assist the vision of the patient under examination. Upon receiving the prescription, or a copy thereof, the patient customarily takes it to an optician who furnishes the glasses in accordance therewith and this method appears to have been followed by those who availed themselves of the professional aid of Dr. Jewett in the matter of their eyes. It is more or less commonly known, and it may also be gathered from the testimony in the case before us, that the doctor and the optician each retain a copy of the prescription in their respective offices for future reference.

The plaintiff, William W. Ferris, was an optician and the son-in-law of Dr. Jewett.   After carrying on the optical business for some years, during which he made glasses for customers sent to him by Dr. Jewett, he sold out his business

in August, 1914, reserving from such sale copies of prescriptions emanating from Dr. Jewett. After disposing of his business Ferris was engaged in other occupations for a period of about two years. He then, in August, 1916, resumed the business of an optician.

In February, 1915, Dr. Jewett died and his son-in-law Ferris was appointed as administrator upon his estate and took possession of his property and effects including his office furniture, appliances, copies of prescriptions, etc.

The defendant, Dr. Alfred W. Pett, was also a specialist in the same lines as Dr. Jewett and for some time prior to the latter's death they had been somewhat associated but not as copartners in professional business. They occupied and used the same waiting room and the same operating room, but each had his own private consultation room and his own patients.

After the death of Dr. Jewett the defendant, Dr. Pett, being desirous of acquiring the business, which had been carried on by the former, entered into a contract with the plaintiff, as administrator, to purchase the business, good will, surgical instruments and furniture for the sum of one thousand dollars. The contract is in writing and bears date January 26, 1916. It provides for a cash payment of two hundred dollars and for the payment of the balance in installments of one hundred dollars each within a year. The contract does not state what part of the consideration is represented by the tangible property and what part by the business and good will but there is some testimony to the effect that in the negotiations between the parties they were considered as being of equal value.

After making payments aggregating five hundred dollars the defendant refused to make any further payments under the contract on the ground that the plaintiff had broken the contract on his part by interfering with the defendant's rights and impairing and injuring the good will by solicitations addressed to the former patients of Dr. Jewett and designed to divert them from the defendant and secure to himself their future patronage.

4

In support of this contention the defendant offered in evidence three letters sent by the plaintiff to patients of Dr. Jewett. It also appears in evidence that other letters to a considerable number were sent out by the plaintiff presumably similar in tenor to those produced in evidence. We quote one of these letters, as follows:

"January 9th.    17.

MRS. JAMES BLAINE
            Arlington, R. I.

DEAR MRS. BLAINE:—

In going over my files this morning I found your name and prescription for glasses as made by the late Dr. H. M. Jewett some little time ago.

In most cases like yours Mrs. Blaine a change of lenses is advisable after such a period as you have had your glasses and so I am writing to inquire if you would like to make an appointment with us to re-examine your eyes at your convenience.

In a short note like this I can do no more than invite you to call at our new offices and acquaint yourself with our modern facilities we have to serve you.

Thanking you in advance for any reply you may care to make.

                    I am
                        Very truly yours,
                            W. W. FERRIS."

The case was tried to a jury in the Superior Court where a verdict was rendered for the plaintiff for the sum of five hundred dollars and interest amounting altogether to $531.83. A motion for a new trial was denied by the trial court and the case is now before us upon the exception of the defendant to that ruling.

There is no conflict of interest between the oculist and the optician so long as the one prescribes the lenses required and the other prepares and adjusts them to suitable frames in which they become practically effective. In the present

case the plaintiff goes much farther as his letters of solicitation clearly indicate. In these letters the plaintiff not only suggests that the party addressed should obtain new glasses from him but that he or she should undergo, at his hands, a re-examination of the eyes with a view to adapting future glasses to such changed conditions as may have resulted from the lapse of time.

We cannot see how the kind or degree of skill required in determining what lenses were suited to the changed condition would differ from that demanded in prescribing glasses in the first instance.

The defendant testifies that he received practically no advantage from the purchase of the good will of the business which had been carried on by Dr. Jewett. That fact would not in itself have any important bearing upon his liability to pay the balance due under the contract. The mere failure of the defendant to realize his expectations as to future business, in the absence of any fraud or interference on the part of the person from whom he makes the purchase, would not establish a failure of consideration. *Smock et al. v. Pierson, Ex'r.,* 68 Ind. 405.

In the case at bar however there is something more to be considered than a failure of the defendant's expectations. The testimony discloses that the plaintiff, after disposing of the good will of the business carried on by Dr. Jewett, interfered with the defendant's rights and sought to divert the business from the defendant, for his own benefit, which clearly amounted to a violation of the contract on his part.

In *Trego* v. *Hunt,* 12 Eng. Rul. Cas. 442, Lord MAC-NAGHTEN said: "A man may not derogate from his own grant; the vendor is not at liberty to destroy or depreciate the thing which he has sold; there is an implied covenant on the sale of good will, that the vendor does not solicit the custom which he has parted with; it would be a fraud on the contract to do so. These, as it seems to me, are only different turns and glimpses of a proposition which I take to be elementary. It is not right to profess and to purport to sell that which you do not mean the purchaser to have; it is

not honest to pocket the price, and then to recapture the subject of sale; to decoy it away or call it back before the purchaser has had time to attach it to himself and make it his very own."

The same rule has been adopted in the case of *Zanturjian* v. *Boornazian et al.*, 25 R. I. 151. In that case the respondents entered into a written agreement with the complainant to convey to him their business, together with the good will thereof. The agreement contained no provision that the respondents should not reëngage in a similar business in the same neighborhood. The complainant offered evidence to show that such was really a part of the agreement although not included in the written instrument, but the court held that such evidence was inadmissible as tending to vary the terms of a written contract and that notwithstanding that the respondents sold the good will of the business they had, in the absence of an express stipulation, the right to re-engage in a similar business in the same neighborhood and the court further said that, "The respondents clearly have not the right, however, to apply to any of their old customers privately, either personally or by another, to secure their patronage or to induce them not to deal with the complainant ; for this would be in plain violation of their written agreement."

The undisputed testimony presents a question of law which was not argued in the court below on the defendant's motion for a new trial. We think that the solicitations of the plaintiff, as evidenced by his letters to former patients of Dr. Jewett, amount to a violation of the contract on his part and that he is not entitled to recover that portion of the contract price which appertains to the good will.

The plaintiff may, if he shall see fit, appear before this court on Wednesday, January 15, 1919, at ten o'clock, a. m., and show cause, if any he has, why this case should not be remitted to the Superior Court with direction to enter judgment for the defendant.

*H. J. Williams, J. J. Rosenfeld*, for plaintiff.

*Washington R. Prescott*, for defendant.