Jacqueline Leppert DILLION, etc.,
Appellant,

v.

Ruth P. ANDERSON et al., Appellees.

No. 16014.

Court of Civil Appeals of Texas.

Dallas.

June 8, 1962.

Rehearing Denied July 6, 1962.

Scurry, Scurry, Pace & Wood, and Richard H. Hodges, Dallas, for appellant.

Hassell & Hassell, W. D. Riley, Jr., Thompson, Knight, Wright & Simmons, Dan Rogers, Eldon R. Vaughan, Cooper Blankenship, Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from a declaratory judgment construing two written instruments: one a contract of sale of an insurance agency, the other a covenant by the seller not to compete with the purchaser.

For a good many years C. B. Anderson and his wife Ruth P. Anderson owned and operated an insurance agency known as C. B. ANDERSON AGENCY, which specialized in health and accident insurance for school children. It was a thriving agency, operating in several states at a large profit.

C. B. Anderson died July 20, 1959, leaving a will naming as devisees, share and share alike, his surviving widow, Ruth P. Anderson and his minor grandson by a previous marriage. The agency was community property, so Ruth P. Anderson owned a one-half of the agency in her own right.

Therefore C. B. Anderson by his will could and did devise only his half of the agency.

Ruth P. Anderson had been quite active in the operation of the business. She was a licensed agent herself. She supervised the office; she was in contact with the schools; she supervised correspondence and claims proceedings; and she was the only person in the agency authorized to represent the Peerless Insurance Company, one of the many insurance carriers for whom C. B. Anderson Agency wrote insurance. Following the death of C. B. Anderson, Ruth P. Anderson operated the agency by herself for six months at a profit of $40,000.

On March 10, 1960 Ruth P. Anderson executed a written contract whereby she undertook to sell the physical assets and property of the Agency together with its trade name and good will to Jack Murphy for a consideration of $17,000. This contract recited that the consideration was paid as follows: for the physical assets, $17,000; for the good will, nothing.

Meantime, the will of C. B. Anderson had been admitted to probate and the First National Bank in Dallas had been named as Administrator with the Will Annexed. The contract of sale between Ruth P. Anderson and Jack Murphy took notice of this pending administration. The contract expressly provides that Ruth P. Anderson will do all she is able to have the Probate Court approve the sale, and should the Probate Court fail to act within a reasonable time she will place ¼ of the purchase price in escrow to protect the grandson, the other beneficiary under the will. She also obligates herself to hold Murphy harmless from claims by the grandson and the estate.

On the same day, March 10, 1960, Ruth P. Anderson executed another contract. In this second contract she covenanted that she would not engage in the business of writing, selling or soliciting the sales of accident insurance for school children in Texas, Oklahoma and Arkansas, or compete directly or indirectly, or enter into the employ of anyone who does compete

with Murphy, the purchaser of the C. B. Anderson Agency, for a period of five years. The consideration for this second contract is $57,000 payable $7,125 per year for eight years.

On April 28, 1960 the First National Bank in Dallas, Administrator of the Estate of C. B. Anderson, filed suit against Ruth P. Anderson for a declaratory judgment and an accounting. The petition was later amended to include other parties.

On September 27, 1960 Jacqueline Leppert Dillion, Guardian of the estate of the minor grandson, filed her plea in intervention.

On April 17, 1961 judgment was rendered, which among other things, declared that First National Bank, Administrator, and Jacqueline Leppert Dillion, take nothing by their suit to declare the second contract, the covenant not to compete, entered into between Ruth P. Anderson and John Arthur Murphy, a part of the Estate of C. B. Anderson, deceased. The court, also held that all money heretofore paid and all payments hereafter received under said second contract, the covenant not to compete, "be and the same are declared to be the property of Ruth P. Anderson, individually."

## OPINION

In two points on appeal appellant in substance contends that (1) the $57,000 proceeds of the second contract, the covenant not to compete, executed pursuant to a sale of the going business belonging to the estate of C. B. Anderson, were in the nature of payments for good will of the business, and, thus, are the property of the estate, not the property of Ruth P. Anderson individually; and (2) the second contract, the agreement not to compete, is a part of the first contract, the agreement for the sale of the business of the estate, and is not severable therefrom, and the total proceeds are an asset of the estate.

We do not agree with appellant. It is our opinion that the agreement of Ruth P. Anderson not to compete with Murphy, the purchaser of the Agency, is personal to Ruth P. Anderson. Only she could bind herself not to compete. Her agreement not to compete is separate from the contract for the sale of the Agency. The latter contract expressly recognizes that a one-fourth interest in the Agency is subject to the provisions of the will of C. B. Anderson, which has been admitted to probate. The record does not indicate whether the Probate Court has or will approve the sale. But regardless of that Ruth P. Anderson did not have to obtain the consent of the Probate Court to validate her agreement not to compete.

Appellees point out that the contract of sale includes good will and argue that a conveyance of good will includes and implies a covenant not to compete.

There are two lines of court decisions on the subject. The minority holdings seem to agree with appellant, but the majority holdings agree with appellee's contentions and support the judgment of the trial court. The question will be found annotated in 82 A.L.R. 1030.

In our opinion the Texas Rule is correctly stated in Sheehan v. Sheehan-Hackley & Co., Tex.Civ.App., 196 S.W. 665. It is there held in substance that in the absence of an express covenant, there is nothing to prevent the assignor of a business and its good will from setting up and conducting a competing business in the same locality, though the right of such seller to compete is subject to this limitation: he must not do anything in derogation of the good will, such as soliciting customers of the old business. See also 38 C. J.S. Good Will § 12, p. 957 and 24 Am. Jur. 813. Therefore, Ruth P. Anderson by undertaking to sell the physical assets of the Agency and its good will did not impliedly bind herself not to compete with the purchaser. It was only in the second and separate contract that Ruth P. Anderson did relinquish a right, personal to her, to use her knowledge, skill and experience

in the business of selling insurance in competition with the purchaser. The court properly declared that the proceeds of the second contract, the covenant not to compete, should go to Ruth P. Anderson, individually, and not to the estate of C. B. Anderson.

Appellant's two points on appeal are overruled.

The judgment of the trial court is affirmed.