DECISION
The plaintiff, Jerold B. Weisman ("Plaintiff"), has filed the within action seeking injunctive relief and damages[1] relative to the breach of a Purchase and Sale Agreement. The defendant, Larry B. Parness ("Defendant"), has filed a counterclaim which also seeks injunctive relief and damages. After receiving respective pleadings and memoranda, a hearing was conducted on August 15, 2007 and August 20, 2007 wherein the Court heard testimony and received exhibits relative to countermotions for preliminary injunctive relief. Thereafter, the parties submitted post hearing memoranda containing suggested findings of fact and conclusions of law. The matter is now before the Court to decide whether to grant preliminary injunctive relief, and if granted, to determine the precise scope of such relief. *Page 2 
 Facts and Travel
Plaintiff and Defendant both practice accounting. In 2001, the parties engaged in conversation concerning Plaintiff's purchase of Defendant's practice. Those negotiations terminated without a sale taking place. Later, in 2002, negotiations resumed. On July 26, 2002, the parties signed a Purchase and Sale Agreement, pursuant to which Defendant sold his accounting practice to Plaintiff. Defendant also executed a Bill of Sale, a NonCompetition Agreement, and a Power of Attorney in favor of Plaintiff. There was conflicting testimony as to exactly what time on July 26th these documents were signed, but it is not disputed that all documents were signed on that day. Additionally, all of the documents were drafted by Plaintiff. The documents generally provided that Defendant was selling his accounting business to Plaintiff, and that Defendant agreed not to practice accounting in the states of Rhode Island, Massachusetts, and Connecticut for a period of five years.
Following the sale, Defendant moved to South Carolina, where he worked for various accounting firms and performed consulting work. During April of both 2003 and 2004, Defendant returned to Rhode Island and worked in Plaintiff's office preparing tax returns for his former clients.
After the 5-year period of non-competition had run, Defendant contacted Plaintiff by letter on June 6, 2007 and indicated that he intended to re-establish his practice of accounting in Rhode Island. Defendant also indicated in his letter that he wants, inter alia, his sign from the exterior of his old building, all certificates and diplomas that were left in his old office, and all personal belongings including his grandfather clock. The letter further indicated that Defendant was revoking the previously executed Power of Attorney, and that *Page 3 
Defendant intended to contact the postal service "to update the mailing address so that all future correspondences addressed to me will be forwarded to me." Finally, Defendant indicated that he intended to contact the phone company to "redirect any telephone calls dialing the telephone numbers listed in the phone directories."
Plaintiff responded by filing the within action seeking injunctive relief and damages. A temporary restraining order issued on June 25, 2007 enjoining Defendant from forwarding telephone calls directed to the Plaintiff's business to any other telephone number, from contacting the United States Post Office for purposes of having any mail redirected, and from communicating with any of Plaintiff's clients or vendors.
Plaintiff has filed the within motion for preliminary injunction seeking to enjoin Defendant from; "unlawfully communicating with clients previously sold to the Plaintiff," "using the name Larry B. Parness, CPA, which has previously been sold to the Plaintiff," and "redirecting telephone calls from the Plaintiff's place of business to Defendant." Defendant has filed with his counterclaim, a countermotion for preliminary injunction asking that "Plaintiff be restrained and enjoined from representing himself to be Larry Parness, C.P.A., through signage, stationary, telephone directory listing or otherwise." Defendant also seeks that "Plaintiff be restrained and enjoined from misleading clients that Larry Parness is associated with his office by accepting telephone calls or receiving mail that is addressed to Larry Parness personally."
The Court conducted a hearing on August 15, 2007 and August 20, 2007 concerning the party's cross motions for preliminary injunctive relief. The Court heard testimony from the Plaintiff and Defendant. Several exhibits were introduced into evidence during the hearing including, but not limited to, a Purchase and Sale Agreement, a Bill of Sale, a Non-Competition *Page 4 
Agreement, and a Power of Attorney. Following conclusion of the hearing, the parties submitted written arguments in support of their positions along with suggested findings of fact and conclusions of law. After considering the testimony given, and the parties' memoranda, the Court finds the following:
 Findings of Fact 1. On the morning of July 26, 2002, Plaintiff and Defendant entered into a Purchase and Sale Agreement in which Defendant sold to Plaintiff his "accounting practice."
 2. The assets described in the agreement as being sold did not include the trade name "Larry B. Parness, C.P.A." and did not mention "goodwill."
 3. The purchase price recited at paragraph 3 of the agreement provided that Plaintiff was to pay $7,500 plus twenty-five (25%) percent of the fees collected by Plaintiff from Defendant's former clients for a period of four years as consideration for the purchase of the practice.
 4. Pursuant to paragraph 4 of the Purchase and Sale agreement, the "closing" was to take place on July 26, 2002 at 5:15 pm, at which time Defendant was to provide to Plaintiff a Bill of Sale of Tangible Assets, a signed Covenant not to Compete approved by Defendant, a Power of Attorney allowing Plaintiff to open mail addressed to Defendant, together with any other documentation necessary to effectuate the transaction.
 5. Paragraph fifteen (15) of the Purchase and Sale Agreement provides that any claim or dispute arising out of the agreement is to be submitted to arbitration.
 6. Sometime during the afternoon of July 26, 2002, the parties executed the additional documents listed in the Purchase and Sale Agreement.
 7. The Bill of Sale signed by Defendant includes as assets sold the "trade name of Larry B. Parness, C.P.A." and "the good will" of Defendant's accounting business.
 8. The "Non-Competition Agreement" signed by both parties generally provided that Defendant was prohibited from practicing accounting in the state of Rhode Island, the Commonwealth of Massachusetts, and the State of Connecticut for a period of five (5) years commencing after the Sale of the Defendant's practice. *Page 5 
 9. The Non-Competition Agreement makes no mention regarding the return of any assets to the Defendant after the five-year period expires.
 10. The Power of Attorney executed by Defendant allows Plaintiff to open all business mail addressed to Defendant that is received at 86 Burlington Street, Providence, Rhode Island, 02906 and provides that all "obviously personal" mail is to be forwarded to Defendant. This document does not list an expiration date.
 11. During the five-year period covered by the Non-Competition Agreement, Defendant had business contact with at least two of his former clients — Mr. Hipolito Freitas and Mrs. Conway. Whether such contact constituted a breach of contract causing Defendant to be liable for damages to Plaintiff is to be determined at arbitration.
After considering the testimony of the parties, reviewing their respective memoranda, and noting the findings of fact recited above, for the reasons stated herein, this Court grants both Plaintiff's and Defendant's request for injunctive relief in part, and denies relief in part.
 Standard of Review
"In deciding whether to issue a preliminary injunction, the hearing justice must consider whether the moving party: (1) has a reasonable likelihood of success on the merits; (2) will suffer irreparable harm without the requested relief; (3) has the balance of equities in his or her favor; and (4) has shown that the requested injunction will maintain the status quo." Pucino v. Uttley, 785 A.2d 183, 186 (R.I. 2001) (citations omitted).
In determining the reasonable likelihood of success on the merits, it is only required that the moving party make out a prima facie case.DiDonato v. Kennedy, 822 A.2d 179, 181 (R.I. 2003) (citing and quotingFund for Community Progress v. United Way of Southeastern NewEngland, 695 A.2d 517, 521 (R.I. 1997)). Furthermore, irreparable harm is considered an injury "presently threatened or imminent and for which no adequate legal *Page 6 
remedy exists to restore that plaintiff to its rightful position."Fund for Community Progress, 695 A.2d at 521 (citations omitted). The equities are determined by "examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief." Id. (citing In re State Employees' Unions,587 A.2d 919, 925 (R.I. 1991)). In total, "a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo." Fund for Community Progress,695 A.2d at 521 (quoting Coolbeth v. Berberian, 112 R.I. 558, 564,313 A.2d 656, 659 (1974)).
 Analysis
Before this Court can address the issue of injunctive relief, it must briefly address arguments raised by Defendant in his post-hearing memorandum concerning lack of consideration and the Parole Evidence Rule. Defendant testified that the Purchase and Sale Agreement was signed some time during the morning of July 26, 2002, and the other documents involved in this matter were signed later in the day. Defendant contends that the Purchase and Sale Agreement executed by the parties "sets out very specifically the assets which were to be included in the sale of the `Accounting Practice,'" and notes that the trade name "Larry B. Parness, C.P.A." is not included in the list of assets mentioned in the Purchase and Sale Agreement. Defendant further notes that "goodwill" is not mentioned in the Purchase and Sale Agreement, and only appears in the Bill of Sale, which makes no reference to additional consideration. Defendant argues that because Plaintiff did not provide any consideration for these "additional intangible assets" included in the later signed *Page 7 
Bill of Sale, the contract is unenforceable as to these assets. Defendant's argument is unavailing.
As a general rule, where there exists an integrated, written agreement, parole evidence may not be used to vary, alter, or contradict that written agreement. Supreme Woodworking Co. v. Zuckerberg,107 A.2d 287, 290, 82 R.I. 247, 252 (1954). By excluding evidence of prior or contemporaneous negotiations, the rule reinforces the importance and primacy of written instruments. Here, because the Court has found that the Non-Competition Agreement was signed after the Purchase and Sale Agreement, not prior to or contemporaneous with it, analysis regarding the Parole Evidence Rule is unnecessary. Furthermore, evidence adduced in the pleadings, testimony and exhibits indicates that Defendant's present desire to return to the business and practice of accounting in the State of Rhode Island is at variance with his prior stated intention to retire from the practice of accounting.[2] Parole evidence has always been admissible to aid in determining whether an agreement has been procured by fraud or mistake. Inleasing Corp. v. Jessup,475 A.2d 989 (R.I. 1984).
In determining if an instrument contains the entire intentions of the parties, the Court must decide if the instrument "appears to be complete within itself and is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement." Smith v. Marcus, 175 Pa. Super. 64, 103 A.2d 277 (1954). The Restatement (Second) of Contracts, § 209(1) defines an integrated agreement as "a writing or writings constituting a final expression of one or more terms of an agreement." A complete integration "is an integrated agreement adopted by the parties as a complete and *Page 8 
exclusive statement of the terms of the agreement." Id. § 210. This Court also notes that an "extrinsic writing must be connected by specific reference or by such mutual knowledge and understanding on the part of both parties that reference by implication is clear."Newton v. Smith Motors, Inc., 122 Vt. 409, 412, 175 A.2d 514 (1961).
As noted above, the Purchase and Sale Agreement specifically references the Bill of Sale, the Non-Competition Agreement, and the Power of Attorney as being part of the agreement between the parties. Accordingly, the fact that these documents were not executed at the same time, and that the Bill of Sale recites no separate consideration makes no difference. This Court concludes that the entire agreement contemplated by the parties is evidenced by all of the above-mentioned writings. Further, because Plaintiff provides consideration as stated in the Purchase and Sale Agreement, such consideration is sufficient to bind Defendant to his promises contained in the other documents. In construing a contract, the primary rule is for the Court to ascertain and give effect to the mutual intention of the parties. Cochran v.Lorraine Manufacturing Co., 52 R.I. 17, 155 A. 572 (1931).
 Injunctive Relief
Whether either party to this action is entitled to a preliminary injunction must be determined through an application of the four-part test set forth above. In the case at hand, the first prong, likelihood of success on the merits, requires this Court to decide whether Plaintiff has made a prima facia showing that Defendant was able to sell — and did sell — to Plaintiff the trade name "Larry B. Parness, C.P.A.," the goodwill of his accounting practice, and all other assets listed in the agreement documents. *Page 9 
Defendant argues that a professional practice does not hold goodwill that can be conveyed to a purchaser. Defendant notes that in Cook v.Lauten, 117 N.E.2d 414 (Ill.App. 1954) the court, while addressing the goodwill of an accounting partnership, held that:
 "The work of certified public accountants requires skill, learning, and experience. It is professional in its character, and in the instant case the parties themselves so regarded their calling. The general rule is that a professional partnership, the reputation of which depends on the individual skill of the members, such as partnerships of attorneys or physicians, has no good will to be distributed as a firm asset on its dissolution. (40 Am. Jur., § 27, p. 316.) See 44 A. L. R., p. 524. In Douthart v. Logan, 86 Ill. App. 294, affirmed in 190 Ill. 243, 60 N.E. 507, this court held in effect that no good will exists except in cases of commercial or trade partnerships, and, adverting to Bates on Partnership, the court said, at page 311: `Good will is not strictly applicable to a professional partnership, for its business has no local existence, but is entirely personal, consisting in a confidence in the integrity and ability of the individual.'" Id. at 416.
Defendant concludes his arguments on this issue by stating that there is considerable authority for the contention that the goodwill of his accounting practice could not be conveyed, and therefore no restrictions should be placed on his ability to contact and service his former clients. Finally, Defendant argues that if this Court finds that a professional practice possesses goodwill, the only restriction which can be placed upon him is the active solicitation of former clients.
Plaintiff argues that under the clear and unambiguous terms of the Bill of Sale, Defendant has sold his trade name and goodwill to the Plaintiff. Plaintiff states that if Defendant is allowed to resume his practice and again provide accounting services to his former clients, such would be equivalent to Plaintiff "renting and maintaining" the practice while Defendant was in South Carolina, and Plaintiff would never obtain the goodwill which he contracted and paid for. *Page 10 
The Court notes that the Rhode Island Supreme Court has never directly addressed the issue of whether a professional practice possesses and can convey goodwill. An examination of cases from other jurisdictions which have addressed the issue reveals that there is a split of authority on the question. Certain jurisdictions state that goodwill is an intangible asset "defined as the expectation of continued public patronage."Matter of Marriage of Fleege, 588 P.2d 1136, 11 (Wash. 1979). Another court has held that "Goodwill is not strictly applicable to a professional partnership, for its business has no local existence, but is entirely personal, consisting in a confidence in the integrity and ability of the individual." Douthart v. Logen, 86 Ill. App. 294, 311
(1899). Alternatively, the Colorado Court of Appeals, while explaining how goodwill derives its value, held that:
 "Goodwill has traditionally been defined as an intangible property right incident to an on-going business with a locality or name. Lerner v. Stone, 126 Colo. 589, 252 P.2d 533 (1952). The underlying theory is that an ongoing business has a value greater than its fixtures and accounts receivable, a value which is an asset of the business that can be sold. Such goodwill has been defined as the expectation of continued and repeated public patronage. In re Marriage of Foster, 42 Cal. App.3d 577, 117 Cal. Rptr. 49
(1974).
 Professional practices that can be sold for more than the value of their fixtures and accounts receivables have salable goodwill. A professional, like any entrepreneur who has established a reputation for skill and expertise, can expect his patrons to return to him, to speak well of him, and upon selling his practice, can expect that many will accept the buyer and will utilize his professional expertise. These expectations are a part of goodwill, and they have a pecuniary value. In re Marriage of Fleege, 91 Wash.2d 324, 588 P.2d 1136 (1979). While we recognize that professional goodwill is not an asset which has an independent market value, it can, in conjunction with the assets of the practice, be sold." In re Marriage of Nichols, 43 Colo.App. 383, 606 P.2d 1314, 1315
(1979).
The Nichols court further noted that "[t]he probability of continued patronage has a present market value to the purchaser of a professional practice." Id. at 1315-1316 (citing In re Marriage of Lukens,16 Wash. App. 481, 558 P.2d 279 (1976)). *Page 11 
Our Supreme Court, in Moretti v. Moretti, 766 A.2d 925 (R.I. 2001), in the context of a divorce case, held that "[i]n evaluating goodwill as a company asset, it is important to distinguish between personal and enterprise goodwill. `Enterprise goodwill is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business.'" Id. at 927-928 (citing Yoon v. Yoon, 711 N.E.2d 1265,1268-69 (Ind. 1999)). A recent article in the Journal of the American Academy of Matrimonial Lawyers, which discussed present positions on professional goodwill, noted that Rhode Island went along with a majority of other states in holding that a professional practice can possess "enterprise goodwill" separate and apart from "personal goodwill," and such enterprise goodwill can constitute marital property. 20 J. Am. Matrimonial Law. 51 (2006).
This Court is aware of the Rhode Island Supreme Court's holding inBecker v. Perkins-Becker, 669 A.2d 524, (R.I. 1996) (holding that "[t] he capitalization of earnings of a professional practice on the basis of the services of a single individual in order to arrive at a good-will factor in ascertaining the value of such practice is improper as a matter of law"). It is left to the parties to resolve in arbitration exactly how much of the goodwill of the accounting practice subject of this litigation was "enterprise goodwill" and how much of the goodwill was "personal goodwill".
Because our Court, albeit in another context, has recognized that a professional practice can possess enterprise goodwill, this Court holds that Plaintiff has made at least a prima facie showing that Defendant's practice possessed goodwill and that Defendant did sell such to Plaintiff under the clear and unambiguous terms of their agreement. A trial *Page 12 
court, at the preliminary injunction stage, need not predict the eventual outcome on the merits with absolute assurance. Ross-Simons ofWarwick, Inc. v. Baccarat, Inc., 102 F.3d 12 (1st Cir. Ct. App. 1996).
Having addressed the issue of whether there was a transfer of goodwill upon the sale of Defendant's practice, the Court must now consider the sale of what the agreement labeled the "trade name" "Larry B. Parness, C.P.A." Defendant argues that when a trade name is a personal name, it cannot be transferred if the trade in question is one where the use of the name would indicate to the public that the skill and care of the specific person is being brought to bear in rendering the services advertised. Defendant directs the Court's attention to Blakely v.Sousa, 47 A. 286, 288 (Pa. 1900), where the court noted that "the name of an artist, an author, a musician, or a lawyer has never been regarded as a trade-name, and as such, salable; the value of the names of such persons being entirely dependent upon their personal reputation, skill and experience, and is indissolubly connected or associated with the owner." Defendant further argues that Plaintiff's use of the name "Larry B. Parness, C.P.A." suggests to the public that Defendant himself is directly involved in the rendering of accounting services, and such use constitutes a fraud upon the public in violation of the laws of this state, the Rhode Island Deceptive Trade Practices Act, and the Rhode Island Code of Ethics for Certified Public Accountants. Defendant states that he does not contest that he sold his practice to the Plaintiff on July 26, 2002, but he argues that the portion of the contract purporting to sell the trade name to Defendant must be held invalid. Based upon other sections of the general laws and a rule adopted by the Rhode Island Board of Accountancy as set forth below, Defendant's arguments relative to this issue are unpersuasive. *Page 13 
Title 5, Chapter 3.1 of the General Laws of this state govern Businesses and Professions — Public Accountancy. G.L. 1956 § 5-3.1-16(h) provides:
 (h) No person holding a permit shall assume or use a professional or firm name or designation that is misleading about the legal form of the firm, or the persons who are partners, officers, members, managers or shareholders of the firm, or about any other matter; provided, however, that names of one or more former partners, members, managers or shareholders may be included in the name of a firm or its successor. (emphasis added)
Our Supreme Court has not issued any decisions interpreting the language of this statute, but the clear and unambiguous language of the statute suggests that the name of "one or more" "former partners, members, managers or shareholders" name may be included in the name of a firm or its successor. In the instant matter, Plaintiff purchased a going concern that operated under the name "Larry B. Parness, C.P.A." In continuing to operate under that name, Plaintiff merely includes a former manager's name as the name of the firm. The language of the statute seems to allow such.
Further, Rule 505 of the AICPA Code of Professional Conduct[3]
provides, in pertinent part, that "[a] member shall not practice public accounting under a firm name that is misleading. Names of one or morepast owners may be included in the firm name of a successororganization." (emphasis added). Again, this language doesn't seem to prohibit what took place in this matter.
Finally, the Rhode Island Deceptive Trade Practices Act, at G.L. 1956 § 6-13.1-1(6) provides a definition of unfair or deceptive acts or practices, in part, as follows:
 (6) "Unfair methods of competition and unfair or deceptive acts or practices" means any one or more of the following: *Page 14 
 (i) Passing off goods or services as those of another;
 (ii) Causing likelihood of confusion or misunderstanding as to the source, sponsership, approval or certification of goods or services;
 (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
Defendant has accused Plaintiff of using his name to intentionally mislead clients and prospective clients that Mr. Parness is an active part of Plaintiff's practice. For that reason Defendant argues that not only should Plaintiff be denied injunctive relief which would restrict Defendant's use of his own name, but Defendant should be granted relief restricting Plaintiff from using the name "Larry B. Parness, C.P.A."
Plaintiff notes that, under the clear and unambiguous language of the Bill of Sale, Defendant sold his trade name to Plaintiff, and Plaintiff testified that including such in the sale was done to alleviate his concerns that if Defendant returned to practice, his former clients would revert back to him. Plaintiff further argues that Defendant must be bound by his decision to sell the trade name, and cannot reclaim it because the trade name and the goodwill sold to Plaintiff are inseparable. Plaintiff directs the Court's attention to O'Hara v.Lance, 267 P.2d 725, 727 (Ariz. 1954) where the court noted "one of the chief elements upon any sale of goodwill is continuity of name. The firm or trade name is, therefore, regarded as inseparable from the goodwill, and is generally held to be transferred when the business and goodwill are transferred." (citations omitted). The O'Hara court also noted:
 "A conveyance of the good will of a business carries with it an implied covenant to do nothing which would derogate from the grant. Sheehan v. Sheehan-Hackley Co., Tex. Civ. App., 196 S.W. 665; Jacob v. Miner, supra. If the vendor of the good will re-engage in business, it is his duty to conduct his new business in such a way that it will not appear to be a continuation of the business that he has sold. Nims, supra, 106. The vendor has a duty, not only to his vendee, but to the public, not to confuse or deceive *Page 15 
the customer into thinking he is in one place of business when he is in another. This type of confusion and deceit is the keystone of unfair competition. And, we have previously pointed out, this is the universal test for the presence of unfair competition: Is the public likely to be deceived? Boice v. Stevenson, 66 Ariz. 308, 187 P.2d 648, citing Grant v. California Bench Co., 76 Cal.App.2d 706, 173 P.2d 817; Bank of Arizona v. Arizona Central Bank, 40 Ariz. 320, 11 P.2d 953." O'Hara at 729.
Finally, Plaintiff notes that he testified under cross-examination that when calls are answered at the phone number Defendant sold to Plaintiff, they are answered "Mr. Parness' office," as they were when Defendant owned the practice. If the caller asks to speak to Mr. Parness, the caller is told that he has retired and is given the option of speaking to Plaintiff. Plaintiff argues that such conduct cannot be considered fraudulent or deceptive because it accurately reflects the terms of the parties' agreements.
This Court finds that the Deceptive Trade Practices Act has not been violated by Plaintiff. Plaintiff had been accurately describing Defendant's status as retired. Evidence of such is found by examining the Purchase and Sale Agreement itself where, at page 1, it states "WHEREAS, Seller desires to retire from the practice of accounting which practice he now carries on in his office at 86 Burlington Street, Providence, RI 02906. . . ." That Defendant has decided to "unretire" and again practice accounting in this state will require that this Court modify what Plaintiff must now indicate to callers of the practice. Such will be addressed later in this decision.
In summary, as to the reasonable likelihood of success on the merits, this Court finds that Plaintiff has met his burden of presenting a prima facie case regarding the sale of the goodwill of the practice and the sale and use of the trade name "Larry B. Parness, C.P.A." Accordingly, the three other prongs cited above in Pucino v. Uttley must be analyzed. *Page 16 
As for the second prong of the preliminary injunction analysis, the Court is persuaded that Plaintiff will suffer irreparable harm without the grant of some requested relief. Without relief Plaintiff may forever lose the benefit of his bargain. According to his testimony, Plaintiff's bargain, and his concern, was for the purchase of a practice from one who would not come back. Now that the period of non-competition has run, Defendant has decided to resume practice in this state. In contrast, Defendant will also suffer irreparable harm unless certain requested relief is granted. The law generally provides that the Defendant must be allowed to make a living. The Court will consider this when fashioning its relief.
Next, the Court must determine which party has the balance of the equities in his favor. Based on the law regarding the sale of an individual's name, and the split of authority relative to the sale of professional goodwill, the Court finds that such would seem to mitigate in favor of very narrowly tailored relief. Again, Plaintiff's hardship is that he might forever lose the benefit of his bargain. Defendant's hardship is that he needs to make a living. The interest of the public, including the clients of the practice, also must be considered.
The Court notes that the transaction documents in this case refer to clients of the practice in two places. The Purchase and Sale Agreement, at pargraph 1, refers to the sale of the practice and what the practice is comprised of. Subsection C of that paragraph includes in the sale "clients' records pertaining to all current clients of the seller (hereinafter referred to as the `Clients'). A complete list of the Clients is attached hereto and made a part hereof as Exhibit `A.'" The Bill of Sale, where it lists the assets sold, specifically refers to ". . . all telephone numbers used in connection with the operation of such business and all current *Page 17 
Clients as itemized in Exhibit `A' attached hereto and made a part hereof, together with all Client files relating thereto."
Plaintiff asks this Court to enjoin Defendant from communicating with Clients contained on the list sold to Plaintiff. Plaintiff argues that if Defendant is able to provide accounting service to his former clients, this would clearly derogate the value of the goodwill purchased by Plaintiff, and would render the purchase of Defendant's practice a nullity. Plaintiff directs the Court's attention to Mohawk MaintenanceCo., Inc. v. Kessler, 52 N.Y.2d 276, 419 N.E.2d 324 (1981) where the court, while considering whether a seller of a business may later solicit former clients, held:
 "A purchaser who acquires the "good will" of a business pays good and valuable consideration for the seller's implied promise to do everything within his power to transfer the loyalties of his customers to the new proprietor. At the very least, the purchaser obtains the exclusive right, as between himself and the seller, to exploit the established loyalties of the firm's customers for the benefit of his newly acquired business. The expectation in the purchaser that arises as a result of the transaction is clearly a vested property right of indefinite duration (see 14 Williston, Contracts [3d ed], § 1640, at pp 118-119, n 6). It would make no more sense to hold that the seller may attempt to defeat this right by soliciting his former customers after the passage of a "reasonable" period of time than it would to hold that the seller of a business may re-enter and attempt to retake the premises and tangible assets of the firm after a "reasonable" time has expired." Id. at 329-330.
Plaintiff's argument, and his reliance on Kessler, disregards holdings in this jurisdiction on the issue.
This Court finds two Rhode Island cases instructive on this issue. InFerris v. Pett, 42 R.I. 48, 105 A. 369 (1919) the Court was faced with a situation where the plaintiff, who was an optician and the son-in-law of a deceased doctor, had sold the doctor's practice to the defendant. The deceased doctor and the defendant both practiced in matters pertaining to *Page 18 
the eye, ear, nose and throat. The plaintiff, administrator of his father-in-law's estate, sold the practice — including goodwill — to the defendant for $1,000. After paying half of the purchase price, defendant refused to make further payments because he learned plaintiff had begun to solicit his father-in-law's former clients. The Court, reversing a jury verdict for the plaintiff, held that the plaintiff, after disposing of the goodwill of the business, interfered with the defendant's rights in seeking to divert the business from the defendant. In finding such, the Court noted:
 "In Trego v. Hunt, 12 Eng. Rul. Cas. 442, Lord MACNAGHTEN said: `A man may not derogate from his own grant; the vendor is not at liberty to destroy or depreciate the thing which he has sold; there is an implied covenant on the sale of good will, that the vendor does not solicit the custom which he has parted with; it would be a fraud on the contract to do so. These, as it seems to me, are only different turns and glimpses of a proposition which I take to be elementary. It is not right to profess and to purport to sell that which you do not mean the purchaser to have; it is not honest to pocket the price, and then to recapture the subject of sale; to decoy it away or call it back before the purchaser has had time to attach it to himself and make it his very own.'" Ferris at 51-52.
More recently, in J. B. Prata, Ltd. v. Bichay, 486 A.2d 266 (R.I. 1983), the defendants had worked as salesmen for the plaintiff, selling a pressure sensitive tape. Neither defendant had signed an employment contract or a Non-Competition agreement. The defendants left plaintiff's employ and went to work for a competitor. The trial court issued a decree preliminarily enjoining the defendants from soliciting or accepting orders from the plaintiff's customers. The court found that the trial court did not abuse its discretion in granting the preliminary injunction, but found that the scope of relief granted was unnecessarily broad, holding "[w]e think the prohibition against accepting unsolicited orders unfairly limits the defendants' entrepreneurial rights and therefore on remand the *Page 19 
decree will be amended so that the defendants are barred only from accepting solicited orders." Id. at 268.
Applying the above to the issue at bar, the Court decides that enjoining Defendant Parness from having any business contact with his former clients would result in granting too broad a relief to Plaintiff. In Ferris, the Court dealt with a seller who actively solicited clients. The Court recognizes that Plaintiff has previously argued thatPrata should be distinguished from this case because that case involved employees who were salesmen, not licensed professionals as here, who entered into a contractual agreement whereby Plaintiff paid for a Client list. The Court finds this to be a distinction without a difference. It is important to note here that the clients are not a party to any part of the transaction, and while this Court may prevent Defendant from actively soliciting any former clients, an order barring Defendant from representing them if they seek him out, would be overbroad in that it deprives the clients of the representative of their choice. Plaintiff argues that there is a difficulty in policing and/or enforcing such a provision. That alone is not sufficient to avoid the issue. Litigation of that issue may involve deposition or in-court testimony of the Defendant or other witnesses. A party or witness who deliberately lies or perjures himself/herself under oath would subject themselves to severe sanctions.[4]
Further, with regard to the balance of the equities in this case, the Court notes that public interest is further implicated here in that there may be two persons or entities practicing accounting under the Parness name. As such, injunctive relief is required to, at least preliminarily, establish the rights of the within parties to use the name. The Court is further aware that it is in the public interest for the parties to resolve the matter quickly through the arbitration process they have provided for. While the public is subjected to the *Page 20 
prospect of two (2) individuals engaged in the practice of accounting under the Parness name, Defendant is left to practice under names other than "Larry B. Parness, C.P.A." or "Larry B. Parness, Certified Public Accountant" thus limiting his ability to make a living as he deems fit for the period of time it takes to resolve this matter. Rule 65 c of the Superior Court Rules of Civil Procedure provides that this Court may order the posting of security in such a sum as it deems proper "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Any such costs and damages will be determined in the arbitration proceeding to resolve the disputes arising out of the Purchase and Sale Agreement.[5] Plaintiff will be ordered to post a bond in the amount of Fifty Thousand ($50,000) Dollars in the event the arbitration is unresolved sixty (60) days after this decision issues. Plaintiff is ordered to increase the bond to One Hundred Thousand ($100,000) Dollars in the event the arbitration is still unresolved one hundred twenty (120) days after this decision issues. This deadline is subject to modification in the event that Defendant unreasonably delays such proceedings.
Finally, this Court finds that injunctive relief is required to maintain the status quo. Preliminary injunctive relief will maintain the status quo, affording the litigants the opportunity to have the merits of this controversy decided in arbitration, pursuant to their agreement.
 Conclusion
After hearing the party's arguments and considering their respective memoranda in support, and because Plaintiff and Defendant have both shown they are entitled to certain preliminary injunctive relief, this Court holds that the following injunctive relief is appropriate: *Page 21 
 1. Defendant is preliminarily enjoined from directly or indirectly soliciting work from his former clients whose names appear on the client list attached to the Purchase and Sale Agreement, except those clients who have terminated their business relationship with Plaintiff prior to July 28, 2007.
 2. Defendant is free to accept accounting work from any former client so long as he does not directly or indirectly solicit the work.
 3. Defendant is preliminarily enjoined from doing business as "Larry B. Parness, C.P.A." as well as "Larry B. Parness, Certified Public Accountant." However, Defendant is not enjoined from doing business under any other name including "Larry B. Parness" or "Accounting Office of Larry B Parness."
 4. Defendant is not enjoined, and is expressly permitted to sign business documents as "Larry B. Parness, C.P.A."
 5. Plaintiff is preliminarily enjoined from retaining mail addressed to Defendant that is not directly related to his accounting practice. Plaintiff shall forward all mail and telephone calls for Defendant that are not directly related to Plaintiff's accounting practice. The Court finds there is an element of urgency here as it is apparent after hearing that Defendant is no longer retired.
 6. Plaintiff is preliminarily enjoined from telling callers who wish to speak to Defendant about accounting practice matters that Mr. Parness has retired. Plaintiff is free to advise such callers that Mr. Parness is no longer associated with that particular practice, and may ask if would they care to speak with Mr. Weisman.
 7. Pursuant to Rule 65(c) of the Superior Court Rules of Civil Procedure, Plaintiff shall post a bond in the amount of $50,000 in the event that arbitration proceedings regarding the rights and obligations contained in the transaction documents are not concluded and decided within 60 days of the date of this decision. The amount of the bond shall increase to $100,000 if the arbitration proceedings are not concluded within 120 days. This deadline is subject to modification in the event that Defendant unreasonably delays such proceedings.
 8. All other injunctive relief is denied.
Counsel for Plaintiff shall prepare an order consistent with this Decision.
[1] The Plaintiff seeks damages in his amended complaint. The Defendant seeks damages for breach of contract in his counterclaim. The parties, however, have provided for arbitration of disputes arising out of their agreement. The arbitration clause, contained in paragraph 15 of the Purchase and Sale Agreement also specifically and expressly survived the closing.
[2] The Purchase and Sale Agreement expressly states, "WHEREAS, Seller desires to retire from the practice of accounting now carried on in his office at 86 Burlington Street, Providence, R.I. 02906 . . ." Page 1 of the agreement.
[3] The AICPA Code of Professional Conduct was adopted by the Rhode Island Board of Accountancy pursuant to G.L. 1956 § 5-3.1-4(f).
[4] See, e.g., R.I.G.L. 11-33-1 et seq. Perjury;
[5] Footnote 1, supra *Page 1